**Crystal CARTIER, Plaintiff–Appellant,**

v.

**Michael JACKSON; MJJ Productions, Inc.; Sony Music Entertainment, Inc.; and Epic Records, Inc., Defendants–Appellees.**

**No. 94–1167**

United States Court of Appeals, Tenth Circuit.

July 10, 1995.

Davide C. Migliaccio (Burton I. Wherry and Edward P. Carlstead of Wherry & Wherry, P.C., Denver, CO, with him on the brief), Colorado Springs, CO, for plaintiff-appellant.

Daniel S. Hoffman (Jeffrey A. Chase, Richard L. Gabriel and Walter H. Sargent of Holme Roberts & Owen LLC, Denver, CO, with him on the brief) of McKenna & Cuneo, Denver, CO, for defendants-appellees.

Before BRORBY, KELLY and HENRY, Circuit Judges.

BRORBY, Circuit Judge.

Singer-songwriter, Crystal Cartier, sued Michael Jackson and others for an alleged infringement of her song "Dangerous" copyrighted July 18, 1991. The jury returned a verdict in favor the defendants. Ms. Cartier appeals the district court's exclusion of particular evidence and appeals one of the jury instructions.[1]

## I

Ms. Cartier allegedly wrote a song called "Dangerous" in 1985. In January 1988, she recorded "Dangerous" as part of another song, "Player." Then, in October 1990, she recorded "Dangerous" as a song by itself. This recording of "Dangerous" was copyrighted in 1991.

Michael Jackson recorded a song also called "Dangerous" in September 1990. Mr. Jackson recalled that his version of "Dangerous" grew out of a song, "Streetwalker," which he wrote with William Bottrell in 1985. After the release of Mr. Jackson's recording of "Dangerous," Ms. Cartier sued Mr. Jackson and others claiming the song infringed on her copyrighted song.

## II

In demonstrating a copyright violation, Ms. Cartier tried to prove Mr. Jackson had access to her version of "Dangerous" before September 1990 by showing that she distrib-

---

1. We grant Ms. Cartier's uncontested motion to supplement her appendix.

uted demo tapes [2] of "Player" in Los Angeles in July 1990 to people who were close to Mr. Jackson. Ms. Cartier asserts the version of "Dangerous" on her demo tapes was similar to her copyrighted version.

Ms. Cartier claims to have distributed approximately twenty-five tapes while in Los Angeles and thus depleted her entire supply of cassettes. Because the original recording was made on a rented master tape, which the recording studio recycled, that copy too had vanished. Ms. Cartier could not locate a single copy of her demo tape in anticipation of this trial. None of Ms. Cartier's friends and family members could produce the cassettes given to them. Ms Cartier tried to contact the record companies, but they would not speak with her. Because Ms. Cartier no longer had any of the demo tapes, she wanted to introduce secondary evidence to prove the contents of the cassettes.

To show the contents of the lost cassettes, Ms. Cartier tried to introduce lyric and chord charts of the version of "Dangerous" on her demo tapes. Ms. Cartier also tried to introduce a recording that recreated this version. The recreation was recorded in May 1992 from Ms. Cartier's memory of the version distributed two years earlier.

The district court, in response to a motion in limine, excluded this secondary evidence on the basis that Ms. Cartier had not made a sufficiently diligent search for the copies of her earlier work. The court held the efforts made by Ms. Cartier to locate a copy of the earlier version of her song were inadequate to satisfy the requirements of Fed.R.Evid. 1004(1) of the Federal Rules of Evidence. Yet, the court gave Ms. Cartier the opportunity to make an additional showing before trial.

■ We review a district court's exclusion of evidence for an abuse of discretion. *See Orjias v. Stevenson,* 31 F.3d 995, 999 (10th Cir.), *cert. denied,* — U.S. —, 115 S.Ct. 511, 130 L.Ed.2d 418 (1994). In reviewing a court's determination for abuse of discretion, we will not disturb the determina-

tion absent a distinct showing it was based on a clearly erroneous finding of fact or an erroneous conclusion of law or manifests a clear error of judgment. *See Lyons v. Jefferson Bank & Trust,* 994 F.2d 716, 727 (10th Cir.1993) (quoting *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405, 110 S.Ct. 2447, 2460–61, 110 L.Ed.2d 359 (1990)); *In re Grand Jury Subpoenas,* 906 F.2d 1485, 1488 (10th Cir.1990). In doing so, we give deference to the district court's evidentiary rulings.

■ The district court found Ms. Cartier's efforts to locate a copy of one of her demo tapes insufficient and suggested she should have subpoenaed the record companies. On appeal, Ms. Cartier does not assert error in the court's questioning of her search efforts as a requirement under Rule 1004(1). Instead, she claims the court erred in finding a diligent search would have encompassed a subpoena of the record companies. She contends subpoenaing the record companies would be futile because the defense has argued that the record companies either return the cassettes immediately or destroy them to avoid exposure to claims of copyright infringement. Regardless of the speculated futility of the search, the district court found her *efforts* insufficient.

Ms. Cartier's search for her demo tapes entailed calling friends and former colleagues. She also searched her residence and her storage materials. She unsuccessfully tried to contact many of the record companies that had received her demo tapes. Neither she nor her attorneys tried to compel any of these record companies to respond to her requests. The evidence presented to the court can be read to support the judge's conclusion that Ms. Cartier did not make a diligent effort in trying to obtain copies of the demo tapes. Thus, we find the district court did not abuse its discretion in excluding the secondary evidence.

■ Ms. Cartier also claims error in the court's focus on the demo tapes rather than the rented master tape. Rule 1004 of the

---

**2.** A demo tape is a recording used to demonstrate the qualities of the performer or piece of music.

Federal Rules of Evidence states "[t]he original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if ... [a]ll originals are lost or have been destroyed." Fed.R.Evid. 1004. Ms. Cartier argues the "original," for purposes of Rule 1004, was the master tape. Thus, the cassettes were already second generation evidence and her efforts to obtain the cassettes are irrelevant. She points out the Federal Rules of Evidence recognize no degrees of secondary evidence. *See* 5 Jack B. Weinstein et al., *Weinstein's Evidence,* ¶ 1004[01] at 1004–6–1004–7. Accordingly, she asserts that because the master tape was erased she has satisfied the requirements of Rule 1004(1). Thus, the demo tapes were admissible as secondary evidence as well as the charts and recreation tape.

However, Ms. Cartier was not trying to prove the contents of the rented master tape. She was trying to show Mr. Jackson had access to her version of "Dangerous" through her demo tapes. Therefore, she had to show what was on the demo tapes. In trying to prove the contents of these cassettes, the demo tapes themselves are the originals or best evidence. Arguing about the master tape in this context is misleading. Ms. Cartier need not, and in all likelihood could not, prove Mr. Jackson had access to her version of "Dangerous" by virtue of the contents of the rented master tape because Mr. Jackson's access is premised on his alleged exposure to the demo tapes. The "original" for which Ms. Cartier is trying to demonstrate the contents was the demo tape. Therefore, according to Rule 1004(1), she must show that the demo tapes, and not the rented master tape, had been lost or destroyed. We find no error.

### III

■ Ms. Cartier also appeals the district court's exclusion of two comparison tapes she wanted to play for the jury. The district court excluded this demonstrative evidence in response to a motion in limine by the defendants. A recording engineer created these tapes to compare portions of Ms. Cartier's song with portions of Mr. Jackson's song. The tapes extracted portions from each ver-

sion of "Dangerous." The tempo of the excerpts from Mr. Jackson's version of "Dangerous" was slowed, and the key of these excerpts was changed from the original key to accommodate this slowing. Various excerpts were looped back on themselves to repeat musical phrases which were not repeated in either original. The tapes also spliced together parts of the choruses which were not adjacent in the originals.

The district court excluded this evidence as not "fairly and accurately depict[ing] the original." Ms. Cartier argues the court committed reversible error by failing to cite a rule of evidence in excluding these tapes. She also asserts that if the evidence was excluded pursuant to Fed.R.Evid. 403, the court erred in failing to articulate a balancing test. Again, we review the district court's decision to exclude evidence for an abuse of discretion. *Hinds v. General Motors Corp.,* 988 F.2d 1039, 1048 (10th Cir.1993).

We interpret the court's conclusion that these tapes do not "fairly and accurately depict the original tape" as a finding that these recordings would mislead the jury. *See* Rule 403. Reading the record as a whole, the district court adequately weighed the evidence in deciding whether to admit the comparison tapes as demonstrative evidence. For example, the court heard oral arguments from counsel on this issue and noted Ms. Cartier was not acting in bad faith by creating these tapes. However, the court found the changes made to the songs in these recordings were so significant that the tapes no longer represented the songs in question in this case. We find no abuse of discretion.

### IV

■ Finally, Ms. Cartier appeals a jury instruction. Ms. Cartier claims it was in error for the court to instruct the jury:

[I]n order to show substantial similarity, the Plaintiff must satisfy both an objective or extrinsic test and a subjective or intrinsic test.... The subjective or intrinsic test focuses on the actions of an ordinary, reasonable person. In applying this test, you must decide or determine whether an ordinary, reasonable, non-expert person

would conclude that the total concept and feel of Jackson's song, "Dangerous," is substantially similar to the total concept and feel of Cartier's song, "Dangerous." Plaintiff must satisfy both of these tests. If you do not find that the plaintiff has satisfied both of these tests, then you must find for the defendants.

Ms. Cartier claims the court erred in instructing the jury on the intrinsic feel test. She argues the intrinsic test characterized as the "total concept and feel" of the song has not been adopted as law by the Tenth Circuit.

■ However, counsel did not object at trial to the jury instruction on the intrinsic test. The court did note an objection by both parties to the extrinsic test mentioned in the same jury instruction, but there is no record of an objection to the inclusion or phrasing of the intrinsic test. Because Ms. Cartier's counsel failed to object with sufficient particularity at trial, we review only for plain error. *See Considine v. Newspaper Agency Corp.*, 43 F.3d 1349, 1367 (10th Cir. 1994). To constitute plain error, the district court's mistake must have been both obvious and substantial. *Id.* (quoting *United States v. Meek*, 998 F.2d 776, 779 (10th Cir.1993)).

Although the total concept and feel aspect of the subjective test in a copyright infringement cases has not been addressed by the Tenth Circuit, other circuits have adopted this test. *See, e.g., Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117, 120 (8th Cir.1987); *Litchfield v. Spielberg*, 736 F.2d 1352, 1356 (9th Cir.1984), *cert. denied*, 470 U.S. 1052, 105 S.Ct. 1753, 84 L.Ed.2d 817 (1985). Because this test is accepted law in other circuits, it was not a substantial and obvious error for the district court to include it in the jury instructions. Also, the instruction did not infringe upon any substantial rights of Ms. Cartier. Accordingly, we do not find plain error in the jury instructions.

## V

For the foregoing reasons, we **AFFIRM** the rulings of the district court.