**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 19 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ROGER D. ROWE,

        Plaintiff-Appellant,

v.

CONOCO, INC., a Delaware
corporation, and a wholly owned
subsidiary of DU PONT COMPANY,

        Defendant-Appellee.

Case No. 97-6107
(D.C. No. CIV-95-1258-L)
(Western District of Oklahoma)

---

**ORDER AND JUDGMENT**   *

---

Before **SEYMOUR** , Chief Judge, and   **PORFILIO**   and   **HENRY** , Circuit Judges.

---

Roger Rowe appeals the district court's grant of judgment as a matter of law to the defendant, Conoco, Inc. Because Mr. Rowe failed to make out a prima facie case of either (1) retaliatory discharge in violation of Oklahoma's Workers' Compensation Act or (2) discharge in violation of Oklahoma public policy, we affirm the district court's decision.

---

    *     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

## BACKGROUND

### The Facts

Because the district court granted judgment as a matter of law to Conoco, we construe the facts in the light most favorable to Mr. Rowe. See Doan v. Seagate Tech., Inc., 82 F.3d 974, 976 (10th Cir. 1996), cert. denied, 117 S. Ct. 684 (1997).

From 1983 until 1993, Conoco employed Mr. Rowe as a laborer and apprentice pipefitter at its Ponca City refinery. On the morning of August 16, 1993, after attending a routine safety meeting, Mr. Rowe received an assignment "to clean the east coke pot." Aplt's App. vol. I, at 247. However, before Mr. Rowe began this job, Larry Kothe, one of Mr. Rowe's supervisors, informed him that he had been selected for a random drug test and that he should report to Conoco Medical within four hours (by approximately 12:30 p.m.) in order to take the test.

Mr. Rowe proceeded to begin cleaning the coke pot. However, before he completed the job, he "started feeling real nauseous." Id. at 260. After vomiting several times, Mr. Rowe proceeded to the office of his direct supervisor, Frank Lessert. Mr. Rowe testified that he told Mr. Lessert, "I got sick out there on the job, and I was feeling very nauseated and having a hard time getting my breath, and I thought I needed to go home or something." Id. at 262. When Mr. Lessert

2

asked Mr. Rowe what had happened, Mr. Rowe replied, "I don't know. I was just overcome and lost my breakfast out there." Id. When Mr. Lessert asked whether Mr. Rowe intended to go home, Mr. Rowe responded that he did but that he would take his drug test before leaving work.

Mr. Rowe then requested and received permission from Mr. Lessert to drive himself to Conoco Medical. Mr. Rowe, however, never reached Conoco Medical. While driving to Conoco Medical, he stopped and vomited again. He then decided to drive to his mother's home, which was located nearby, in order to clean himself up. When he arrived at his mother's home, no one was there, and he discovered that he had left his keys to his mother's house at work. Locked out and feeling ill, Mr. Rowe proceeded to lie down and fall asleep in the back of his van.

When Mr. Rowe awoke, he felt no better. He proceeded to drive to his own home, which was located approximately 16 miles from his mother's house. He arrived home at roughly 10:30 a.m. and immediately telephoned Mr. Lessert. Mr. Rowe informed Mr. Lessert that he had gotten sick again and that he had been unable to get to Conoco Medical to take the drug test. Mr. Lessert told Mr. Rowe that he "really should have made it through Medical" and that he would telephone Mr. Kothe to apprise him of the situation. Id. at 268.

3

Mr. Rowe then decided that he, too, would telephone Mr. Kothe. When his attempts to reach Mr. Kothe failed, Mr. Rowe left Mr. Kothe a voice mail message stating that he had "got[ten] sick," that he hadn't "ma[d]e it into Medical," that he had been in contact with Mr. Lessert, that he would "get back with [Mr. Lessert] later," and that he "was going to get a hold of [his] doctor." Id. at 268-69. Mr. Rowe then telephoned his private physician and made an appointment with him for later that afternoon. He left a message with Mr. Lessert stating that he had made arrangements to see his doctor later that day.

Mr. Kothe telephoned Mr. Rowe at 11:30 a.m. and informed him that he had one hour to report to Conoco Medical to take his drug test. Mr. Rowe told Mr. Kothe that he made an appointment with his private physician, that he "was too sick to drive back" to Conoco Medical, but that he "would be glad to take [a drug test] at [his] doctor's, if that would be okay." Id. at 271-73. Mr. Kothe, however, refused to allow Mr. Rowe to take the test anywhere other than Conoco Medical. Mr. Kothe informed Mr. Rowe that he had "better find somebody to get [him] back over [to Conoco Medical] because . . . [he was] running out of time," and that he "was bordering on the line of insubordination." See id. at 272-73.

After trying unsuccessfully to contact his wife, Mr. Rowe called Mr. Kothe at 12:15 p.m. Unable to reach Mr. Kothe, Mr. Rowe left a message on Mr. Kothe's voice mail stating that he could not find anyone to drive him to Conoco

4

Medical. At 12:45, Mr. Kothe called Mr. Rowe back and informed him that his "time was up, and [he] would be receiving a letter in the mail of termination for insubordination." Id. at 274.

Mr. Rowe visited his private physician later that day. The doctor diagnosed Mr. Rowe as suffering from heat exhaustion. The following day, Mr. Rowe received his termination letter from Conoco.

### The Legal Proceedings

In November 1993, Mr. Rowe filed a claim for workers' compensation benefits, alleging that he had suffered heat stroke on August 16, 1993. In February 1994, Mr. Rowe filed a second workers' compensation claim, alleging that he had suffered a lung injury as a result of exposure to various chemicals during his employment at Conoco. In January 1995, the Oklahoma Workers' Compensation Court found that Mr. Rowe did, in fact, suffer a 9% permanent partial disability due to injury to his lungs caused by exposure to dust, smoke, and fumes at Conoco.

In August 1995, Mr. Rowe filed the complaint in this action, alleging that Conoco violated: (1) the Oklahoma Workers' Compensation Act, Okla. Stat. tit. 85, § 5, which forbids an employer from terminating an employee because he instituted a workers' compensation claim; and (2) Burk v. K-Mart Corp., 770 P.2d 24 (Okla. 1989), which forbids an employer from terminating an employee

because the employee performed an act consistent with a clear and compelling public policy or because the employee refused to violate such a public policy.

Prior to trial, the district court dismissed Mr. Rowe's Burk claim without prejudice, finding that Mr. Rowe had failed to articulate the precise constitutional, statutory, or decisional law that purportedly gave rise to this claim. The court, however, granted Mr. Rowe leave to amend his complaint, and Mr. Rowe promptly filed an amended complaint alleging that Conoco had violated Burk when it denied him the right "to receive medical treatment for his job related injuries from the physician of Plaintiff's choice and refused to allow Plaintiff to receive a (random) drug test administered by Plaintiff's doctor." Aplt's App. vol. I, at 9-10.

In the final pretrial order, Mr. Rowe attempted to assert a second basis for his Burk claim: that Conoco had violated the Standards for Workplace Drug and Alcohol Testing Act of Oklahoma, Okla. Stat. tit. 40, §§ 551-565, by purportedly "fail[ing] to post a copy of the drug testing policies and changes to the policies and fail[ing] to provide each employee with the policies and changes to the policy." See Aplt's App. vol. I, at 121. The district court, however, ruled that because Mr. Rowe had not raised the issue of Conoco's failure to post its drug policies until the eve of trial, he could not proceed on this theory.

6

Thus, at trial, the district court permitted Mr. Rowe to pursue only two claims: (1) his "physician of his choice" Burk claim; and (2) his Oklahoma Workers' Compensation Act claim. After Mr. Rowe put on his case-in-chief at trial, the district court granted Conoco's Fed. R. Civ. P. 50 motion for judgment as a matter of law on both claims.

## DISCUSSION

### I. Oklahoma Workers' Compensation Act Claim

We review a district court's decision to grant judgment as a matter of law de novo. See Doan, 82 F.3d at 976.

The Oklahoma Workers' Compensation Act prohibits an employer from discharging "any employee because the employee has in good faith filed a claim, or has retained a lawyer to represent him in said claim, instituted or caused to be instituted, in good faith, any proceeding under the provisions of this title." Okla. Stat. tit. 85, § 5. The broad "instituted or caused to be instituted" language, which the legislature included in addition to the narrow "filed a claim" phraseology, indicates that for the purposes of this statute an employee may "institute" workers' compensation proceedings "without actually filing a claim." See Buckner v. General Motors Corp., 760 P.2d 803, 808 (Okla. 1988). The rationale behind this approach "is that if an employee must formally file a claim for workers' compensation benefits prior to the allegedly wrongful discharge, an

7

employer might be encouraged to terminate an injured employee expeditiously, before the employee has an opportunity to file a claim." Id.

In Buckner , the Oklahoma Supreme Court established a four-pronged test for determining whether a plaintiff has made out a prima facie case of retaliatory discharge in violation of Okla. Stat. tit. 85, § 5. Thus, to show that the district court erred in granting Conoco judgment as a matter of law, Mr. Rowe must demonstrate:

(1)     employment;

(2)     on-the-job injury;

(3)     receipt of treatment under circumstances that put the employer on notice that treatment had been rendered for a work-related injury; and

(4)     consequent termination of employment.

See id. at 806. Conoco levels its charge at the third element of Mr. Rowe's prima facie case, arguing that he did not receive treatment under circumstances that placed the company on notice that he suffered a work-related injury.

At trial, Mr. Rowe testified that on the morning of August 16, 1993 he told Mr. Lessert, his immediate supervisor, that he got sick while working, that he was experiencing nausea and having a hard time catching his breath, and that he wished to go home. See Aplt's App. vol. I, at 262. When Mr. Lessert asked him what had happened, Mr. Rowe replied, "I don't know. I was just overcome and

8

lost my breakfast out there." Id. Mr. Rowe then requested and received permission from Mr. Lessert to see his private physician about his condition.

The Buckner court rejected the notion that an employer's knowledge that an employee had sought medical treatment, without more, was sufficient to put the employer on notice that a workers' compensation claim was imminent:

> [I]t is presumptuous to conclude that every time an employer provides first aid treatment that a workers' compensation proceeding has been 'instituted.'. . . Merely seeking and receiving first aid is not in and of itself sufficient to institute proceedings. . . . First aid coupled with circumstances which raise a clear inference of an anticipated claim must be present before the institution of proceedings is triggered.

760 P.2d at 810-11. Applying this standard, we hold that Mr. Rowe has failed to demonstrate that his statements to Mr. Lessert were sufficient to place Conoco on notice that his nausea was in any way job-related; Mr. Rowe simply requested permission to see his physician after telling Mr. Lessert that he had experienced difficulty catching his breath and had vomited while he was cleaning the coke pot.

Mr. Rowe now contends that his nausea resulted from exposure to toxic fumes that were released in the process of cleaning the coke pot. However, Mr. Rowe never mentioned anything about exposure to such fumes when he informed Mr. Lessert about his condition on the morning of August 16th. Moreover, if Mr. Rowe believed that the fumes were the cause of his nausea, he would certainly have alerted his physician to this fact when he paid him a visit later that same

9

day.  Mr. Rowe, though, offered no evidence at trial that he even mentioned these fumes to his doctor during that visit.

Mr. Rowe's own testimony demonstrates that on August 16th he did not provide Conoco with information that would have led the company to believe that fumes from the coke pot caused his nausea.  The evidence also indicates that on August 16th even Mr. Rowe did not suspect that his nausea was related to such fumes.  Moreover, based on his examination of Mr. Rowe later that day, Mr. Rowe's physician determined that acute heat exhaustion, not exposure to toxic fumes, was the cause of Mr. Rowe's nausea.  And it would be manifestly unfair to charge Conoco with knowledge that neither Mr. Rowe nor his treating physician possessed.  Thus, Mr. Rowe has failed to demonstrate that he sought medical treatment under "circumstances which raise a clear inference of an anticipated claim" and, accordingly, has failed to make out a prima facie case of retaliatory discharge under the Oklahoma Workers' Compensation Act.      See Buckner , 760 P.2d at 811.

In addition, even if Mr. Rowe had established a prima facie case of retaliatory discharge, he could not have survived Conoco's Rule 50 motion unless he introduced evidence suggesting that Conoco's proffered reason for terminating Mr. Rowe--his failure to submit to the random drug test within the prescribed four-hour period--was pretextual.    See id. at 807.  For instance, Mr. Rowe could

10

have satisfied this burden by introducing evidence that Conoco had not terminated other employees who had failed to submit to drug tests. However, Mr. Rowe offered no evidence that cast doubt on Conoco's proffered explanation for his termination. And in the absence of such evidence, Mr. Rowe's retaliatory discharge claim under Okla. Stat. tit. 85, § 5 is doubly doomed.

## II. Burk Claim

Mr. Rowe also appeals the district court's grant of judgment as a matter of law on his claim under Burk v. K-Mart Corp., 770 P.2d 24 (Okla. 1989). In Burk, the Oklahoma Supreme Court recognized an exception to the employment-at-will doctrine and allowed a discharged employee to recover from his former employer where he demonstrated that his discharge was "contrary to a clear mandate of public policy as articulated by constitutional, statutory or decisional law." Id. at 28. The court admonished that this exception "must be tightly circumscribed" and that an employee could only recover after demonstrating that he had been "discharged for refusing to act in violation of an established and well-defined public policy or for performing an act consistent with a clear and compelling public policy." Id. at 29.

As the basis of his Burk claim, Mr. Rowe alleged that Conoco refused to permit him to choose the physician who would: (1) treat him for his on-the-job injury; and (2) administer his drug test. As an initial matter, Mr. Rowe failed to

11

point to any constitutional, statutory, or decisional law that guarantees an employee the right to be drug-tested by the physician of his choice. Thus, to the extent Mr. Rowe's Burk claim is predicated on the right to be drug-tested by the physician of his choice, that claim must fail.

The remainder of Mr. Rowe's claim hinges upon his claim that Conoco denied him the right to receive treatment from the physician of his choice. Mr. Rowe, though, has not introduced any evidence to support this allegation. In fact, Mr. Rowe's own testimony demonstrates that as soon as Mr. Lessert learned that Mr. Rowe was ill, Mr. Lessert gave him permission to leave work. See Aplt's App. vol. I, at 262. Although Mr. Lessert did instruct Mr. Rowe to take his drug test before leaving (an instruction that Mr. Rowe disobeyed), this instruction did not prevent Mr. Rowe from visiting the physician of his choice. Thus, we need not decide the theoretical question of whether preventing an employee from exercising such an option could serve as a valid basis for a Burk claim.

Mr. Rowe's brief also makes passing mention of the district court's refusal to allow him to rely on Conoco's alleged failure to post its drug policy as an alternative basis for his Burk claim. He asserts that this decision constituted an abuse of discretion. During the approximately eighteen months this case was pending, though, Mr. Rowe never even attempted to amend his complaint to

12

include this alternative theory. Rather, six days prior to trial, he surreptitiously inserted this new theory into the joint pretrial statement.

This new claim was based on completely different facts than Mr. Rowe's other two claims. Neither in district court nor on appeal did Mr. Rowe offer any explanation as to why he waited until less than a week before trial to introduce this new claim. Consequently, the district court was well within in its discretion in refusing to inject this new theory into the case on the eve of trial. See Frank v. U.S. West, Inc., 3 F.3d 1357, 1365-66 (10th Cir. 1993) (holding that "untimeliness alone is a sufficient reason to deny leave to amend, especially when the party filing the motion has no adequate explanation for the delay") (citations omitted).

### III.    Evidentiary Rulings

Mr. Rowe also appeals a series of the district court's evidentiary rulings. We review these rulings for abuse of discretion. See Cartier v. Jackson, 59 F.3d 1046, 1048 (10th Cir. 1995). In addition, we note that "error in the admission or exclusion of evidence is harmless if it does not affect the substantial rights of the parties." Gomez v. Martin Marietta Corp., 50 F.3d 1511, 1518 (10th Cir. 1995) (quotation omitted).

Mr. Rowe first appeals the district court's decision to exclude an internal Conoco document known as a Material Safety Data Sheet. The Data Sheet, which

is stored on Conoco's computer system, generally describes decant oil, the substance that purportedly emitted the fumes that Mr. Rowe believes caused his nausea. The Data Sheet describes, among other things, the components of decant oil, its physical and chemical properties, and precautions individuals should take when working with it.

At trial, Mr. Rowe attempted to introduce the document through the testimony of John Botts, Mr. Rowe's former co-worker at Conoco, arguing that the Data Sheet was relevant because it established that "Conoco knew that the tasks [Mr. Rowe] was doing could create harm to him or cause physical injury, if he was exposed to any of the gases or vapors involved in this job he was performing on August 16th of 1993." Aplt's App. vol. I, at 226. The district court rejected this attempt to introduce the Data Sheet, ruling that Mr. Botts was "not the proper witness to sponsor the document." Id. at 227. The court, however, left the door open for Mr. Rowe to introduce the Data Sheet through another witness "who could interpret it and give some statement as to Conoco, what the document meant and as to Conoco's knowledge of it." See id. at 228. After this ruling, though, Mr. Rowe made no further attempt to introduce the Data Sheet.

On appeal, Mr. Rowe once again urges that the Data Sheet is relevant to show that Mr. Rowe's supervisors had knowledge that his nausea and shortness of

breath were job-related.    See Aplt's Reply Br. at 9.  However, even if the information contained in the Data Sheet does establish a link between vapors contained in the coke pot and Mr. Rowe's nausea and shortness of breath, in order to establish its relevancy, Mr. Rowe must show that Mr. Lessert or Mr. Kothe was familiar with the Data Sheet.  Mr. Botts's testimony, though, did not establish that either man had any knowledge of the contents of the Data Sheet.  Accordingly, the district court did not abuse its discretion when it excluded the Data Sheet on the ground that Mr. Botts's testimony had not laid a proper foundation for its admission.

Relatedly, Mr. Rowe disputes the court's decision to exclude Mr. Botts's testimony regarding his knowledge of the contents of the Data Sheet.  Once more, Mr. Rowe contends that this testimony was relevant to show that Conoco had knowledge that exposure to decant oil vapors had caused Mr. Rowe's nausea and shortness of breath.    See id.  Again, though, Mr. Rowe failed to demonstrate how Mr. Botts's testimony would have established a nexus between the information contained in the Data Sheet and Conoco's purported knowledge that exposure to decant oil vapors was responsible for Mr. Rowe's condition.  Consequently, the district court also properly excluded this testimony as irrelevant under Rule 401.

The district court also sustained Conoco's objections to Mr. Rowe's attempts to elicit testimony from Mr. Botts and Louis Clark, another former co-

15

worker of Mr. Rowe's, regarding whether Conoco's coke pots contained hydrogen sulfide gas (one of the components of decant oil, and the gas that Mr. Rowe believes caused his nausea and shortness of breath).  Once more, Mr. Rowe sought to introduce this testimony to demonstrate that at the time Conoco terminated him, the company had notice that he had suffered an on-the-job injury.

As a threshold matter, Mr. Rowe failed to lay any foundation as to how these men might have known the precise chemical composition of a gas that purportedly escaped from those pots.  Although Conoco notes that neither Mr. Botts nor Mr. Clark is a chemist, an advanced degree is not necessarily a prerequisite to testify about hydrogen sulfide gas, a substance commonly known for its distinctive rotten-egg-like odor.        See Webster's Ninth New Collegiate Dictionary  590 (1986).  However, before a court can deem such testimony relevant, the proponent must first lay a foundation demonstrating how the lay witness came to be able to identify the substance in question.  Here, though, Mr. Rowe laid no such foundation before attempting to introduce the testimony of either Mr. Botts or Mr. Clark.

More importantly, even if Mr. Rowe had laid the proper foundation for the testimony of Mr. Botts and Mr. Clark, neither man's testimony would have helped to establish that Mr. Rowe's supervisors were aware that exposure to decant oil vapors caused his nausea and shortness of breath.  Without such a link, this

16

testimony could not clear Rule 401's relevancy hurdle.  Thus, the district court properly excluded both men's proposed testimony.

Finally, Mr. Rowe appeals the district court's decision to exclude the Order that the Workers' Compensation Court entered in his case.  That Order memorialized the court's finding that exposure to dust, smoke, and fumes at Conoco had permanently damaged Mr. Rowe's lungs.  Mr. Rowe argues that this Order establishes both that he suffered a work-related injury and that Conoco was on notice that he had suffered a work-related injury.

In determining whether Conoco was on notice that Mr. Rowe had suffered a work-related injury, we may only look at what Conoco knew at the time it made the decision to terminate him.    See Barber v. Payless Cashways, Inc.    , 787 P.2d 1301, 1303 (Okla. Ct. App. 1990) (holding that in cases alleging violations of Okla. Stat. tit. 85, § 5, courts "must look at the evidence as it existed at the time of the medical treatment and termination").  The Workers' Compensation Court did not enter its Order until January 1995, nearly 1½ years after Conoco terminated Mr. Rowe.  Conclusions that the court was able to draw with the benefit of hindsight, not to mention a full-blown hearing, are in no way probative of what Conoco may or may not have known about the causation of those injuries on August 16, 1993, the day the company made its decision to terminate Mr.

Rowe. Accordingly, the district court correctly determined that this Order possessed no probative value on the issue of notice.

The Order, though, is probative on another significant issue in this case: whether Mr. Rowe did, in fact, suffer an on-the-job injury on August 16, 1993. As discussed previously, in order to recover for retaliatory discharge under the Oklahoma Workers' Compensation Act, Okla. Stat. tit. 85, § 5, a plaintiff must establish, among other things, that he suffered an on-the-job injury. See Buckner, 760 P.2d at 806. In its Order, the Workers' Compensation Court states that Mr. Rowe

> suffered an occupational disease consisting of injury to the lungs (pulmonary obstructive disease) due to the continued inhalation of, and exposure to, harmful dust, smoke and fumes; that exposure to the said substances was peculiar to or characteristic of [his] employment with [Conoco]; [and] that [his] last injurious exposure to the said hazard was August 16, 1993.

Aplt's App. vol. II, at 574.

This passage is relevant to the question of whether Mr. Rowe suffered an on-the-job injury. Thus, the district court erred when it excluded the Order on Rule 401 grounds. Nevertheless, we will not reverse the district court's judgment unless we find that the erroneous exclusion of the Order "affect[ed] the substantial rights of the parties." Gomez, 50 F.3d at 1518 (quotation omitted).

By excluding the Order, the district court prevented Mr. Rowe from introducing a piece of evidence that would have supplied a vital piece of his case,

18

establishing, at least for prima facie purposes, that he had suffered an on-the-job injury. However, the Order would not have mended another gaping hole in Mr. Rowe's case: his failure to establish that Conoco had notice that he had suffered a work-related injury at the time it made the decision to terminate him. Without such evidence, Mr. Rowe was still one brick short of a prima facie case. See Buckner, 760 P.2d at 806. Furthermore, as discussed previously, Mr. Rowe also failed to demonstrate that Conoco's proffered reason for his termination–his failure to submit to a random drug test within the required time frame–was pretextual. Thus, even if the district court had admitted the Order, Conoco would nonetheless have been entitled to judgment as a matter of law. Consequently, the district court's exclusion of this evidence did not affect Mr. Rowe's substantial rights and does not merit reversal. [1]

---

[1]In his opening brief, Mr. Rowe states that "[t]he district court erroneously sustained Conoco's objection(s) to Rowe's attempts to present evidence regarding his respiratory problems arising out of his employment commencing during the period of 1990 and continuing through his August, 1993 termination to support his reports of job related illnesses to Conoco." Aplt's Br. at 21. Mr. Rowe, however, offered no rationale or authority as to why the district court's decision to exclude such evidence purportedly constituted error and made no further mention of this argument in the remainder of his opening brief or in his reply brief.

We have held that a party who mentions a point in passing but "fail[s] to make any argument or cite any authority to support his assertion" waives that argument. See United States v. Hardwell, 80 F.3d 1471, 1492, reh'g granted in part on other grounds, 88 F.3d 897 (10th Cir. 1996), cert. denied, 118 S. Ct. 1570 (1998). Accordingly, we will not consider Mr. Rowe's argument that the district court improperly excluded evidence regarding his respiratory condition.

19

## CONCLUSION

Because the district court properly granted Conoco's Rule 50 motion for judgment as a matter of law on Mr. Rowe's retaliatory discharge claims under both Okla. Stat. tit. 85, § 5 and   Burk v. K-Mart Corp., 770 P.2d 24, we hereby AFFIRM the decision below.

Entered for the Court,


Robert H. Henry
Circuit Judge