**F I L E D**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

EDWARD A. CUNNINGHAM,

    Plaintiff-Appellant,

v.

KENNETH ADAMS, an individual;
ADAMS INVESTMENT COMPANY,
also doing business as Central State
Business Forms, an Oklahoma
corporation,

    Defendants-Appellees.

No. 03-5144
(D.C. No. CV-02-642-E(J))
(N.D. Okla.)

**ORDER AND JUDGMENT** *

Before **HENRY** , **MURPHY** , and **TYMKOVICH** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Edward A. Cunningham appeals from the district court's orders granting summary judgment for the defendants and striking the affidavit of Cunningham's expert witness Gary Barnes. We affirm.

## 1. Introduction

Cunningham brought this complaint pursuant to the civil enforcement provisions of the Employee Retirement Income Security Act (ERISA). ERISA § 502(a), 29 U.S.C. § 1132(a). His complaint alleged that defendant Kenneth Adams had violated the anti-inurement provisions of ERISA § 403(c)(1), 29 U.S.C. § 1103(c)(1), by removing and/or borrowing money from the Adams Investment Company and Affiliates Employees' Pension Plan (Plan). The complaint further charged that the defendants had terminated him in violation of ERISA's anti-retaliation provision, ERISA § 510, 29 U.S.C. § 1140, for seeking a history and/or accounting of the Plan.

The district court determined that since the Plan was a "defined contribution plan" which provided a separate account for each participant and allocated income, expenses, gains and losses to each individual account, *see* 29 U.S.C. § 1002(34), and since the distribution to Adams was from Adams's own account, the transaction had no adverse impact on Cunningham or any other Plan participant. It further determined that Cunningham could not establish a prima facie case of interference with the exercise of his ERISA rights, because he could

not show defendants had any retaliatory intent when they terminated his employment. Finally, the district court concluded Cunningham failed to show that the reason defendants gave for his termination, absence from his assigned work area during working hours, was a pretext for a retaliatory discharge.

## 2. Standard of review

> We review a grant of summary judgment *de novo*, applying the same standard as the district court. We examine the record to determine whether any genuine issue of material fact was in dispute; if not, we determine whether the substantive law was applied correctly, and in so doing we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion. However, where the non moving party will bear the burden of proof at trial on a dispositive issue that party must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment.

*Neal v. Roche*, 349 F.3d 1246, 1249 (10th Cir. 2003) (quotation omitted).

## 3. Anti-inurement claim

Section 403(c)(1) of ERISA provides in part that "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." 29 U.S.C. § 1103(c)(1). Cunningham's complaint alleges that Adams directed release of funds or borrowed funds from the Plan, but provides no specifics concerning any improper transactions. In their motion for summary judgment, defendants

asserted as an undisputed fact that "[p]laintiff's claim under [ERISA] § 403 arises solely out of [a] 1986 distribution to Kenneth Adams [from the Plan]." Aplt. App., Vol. I at 62 (discussing defendants' undisputed fact No. 30); *see also id.* at 59.

Cunningham did not directly dispute this attempt to limit the factual basis of his claim. *See id.* at 104-05. Elsewhere in his response to the motion for summary judgment, however, Cunningham asserted that his claim was based on *several* allegedly improper transactions or "accounting discrepancies" including: (1) a distribution from the Plan on August 31, 1986, of $341,036.80 by Kenneth Adams; (2) an alleged payout to Adams of $4,808.00 on August 31, 1986; (3) a number of forfeitures and debits allegedly in favor of Adams or of Ken-Ada, a ranch Adams owned; and (4) various other accounting entries reflecting increases or decreases in Plan assets or investments without returns reflected in the accounting ledger. *Id.* at 87-93.

In its order granting summary judgment, the district court analyzed the August 31, 1986 distribution in detail. It gave short shrift to the other allegedly improper transactions Cunningham mentioned, however, concluding that "Cunningham has not submitted evidence that connects those transactions to Adams" and that Cunningham failed to allege that Adams could be held liable more broadly for the transactions as a Plan fiduciary. *Id.* at 26 n.12. In his

-4-

appellate brief, Cunningham continues to assert that both the August 31, 1986 distribution and the additional transactions violated ERISA. Aplt. Opening Br. at 4-5. Giving Cunningham the benefit of the doubt, we will consider both the August 31, 1986 distribution and the additional transactions as the bases asserted for his § 403(c)(1) claim.

### A. August 31, 1986 distribution

Cunningham's argument concerning the August 31, 1986 distribution boils down to this: he claims Adams withdrew his contributions and the employer matching contributions from the Plan, under the guise of being terminated, when in fact Adams remained the President and Chairman of the Board for Adams Investment Company and its affiliates. The district court found that even if this were true, Adams had only received a distribution of those funds that were in his own discrete Plan account, under the defined contribution structure of the Plan. Therefore, the court concluded, the distribution "is really not the concern of Mr. Cunningham because the transaction had no adverse impact on any other participant [besides Adams]." Aplt. App. at 26 (emphasis omitted).

In order to have standing to proceed with this action, Cunningham must show that he was personally injured or harmed by the challenged withdrawal. *See generally Piazza v. Ebesco Indus., Inc.*, 273 F.3d 1341, 1353-54 (11th Cir. 2001); *Bennett v. Conrail Matched Sav. Plan Admin. Comm.*, 168 F.3d 671, 678-79 (3d

Cir. 1999). As the party invoking federal jurisdiction, it is Cunningham's burden to demonstrate an injury in fact sufficient to confer standing. *See Utah Animal Rights Coalition v. Salt Lake City Corp.*, 371 F.3d 1248, 1255 (10th Cir. 2004). For the reasons stated by the district court, he failed to make this showing concerning the August 31, 1986 distribution.[1] We therefore affirm the district court's grant of summary judgment on the anti-inurement claim concerning the August 31, 1986 distribution.

---

[1] Cunningham does not contest the district court's determination that the Plan is a defined contribution Plan with segregated accounts for participants. Aplt. Opening Br. at 15. He asserts that this determination is "misleading," but he fails to provide any facts to establish any injury in fact to himself, reiterating only his contention that Adams's "intended withdrawal of PLAN funds was inappropriate." *Id.*

In his reply brief, Cunningham incorporates by reference a mathematically-based argument he made in a district court brief, purporting to show that the funds distributed to Adams exceeded the maximum contributions Adams could have made to the Plan between January 1, 1983 and August 31, 1986, unless Adams was earning in excess of $1.5 million per year. Aplt. Reply Br. at 1; *see* Aplt. App., Vol. I at 87-89. If Adams was distributed more than he was entitled to as a Plan participant, this could have an adverse effect on other participants. As defendants pointed out in their district court briefing, however, Cunningham's argument is fatally flawed because it assumes that the Plan had only been in existence since 1983. In fact, the Plan was merely a restatement of a Plan already in effect since 1978. *See* Aplt. App., Vol. II at 275. Therefore, the mathematical argument does not establish that Adams was distributed more than his share of Plan assets.

-6-

## B.  Other alleged loans and withdrawals

The district court found that Cunningham failed to tie any of the other allegedly suspicious transactions he mentions to Adams.  It noted, further, that Cunningham's complaint did not allege that Adams is a Plan fiduciary who could be held liable under fiduciary standards for such transactions.

In response to defendants' motion for summary judgment, Cunningham presented no evidence sufficient to survive summary judgment in support of his theory that the additional transactions violated ERISA.  The evidence he did submit either referred specifically to the August 31, 1986 distribution, did not refer to any specific transaction, or represented only speculation about whether the additional transactions violated ERISA.  *See* Amended Affidavit of Billy Jim Weintz, Aplt. App. Vol. I at 126 (stating Adams directed Weintz to withdraw *Adams' contributions* and company matching contributions from the Plan); Affidavit of Paul Venamon, *id.* at 213-14 (detailing unspecified distribution of $200,000 or more to Adams from Plan); Gary Barnes opinion letter, *id.* Vol. II at 308 (referring non-specifically to "funds . . . inappropriately transferred to the general operating account of Adams Investment Company"); Gary Barnes affidavit, *id.* at 331 (stating that entries "indicate[] *possible* inappropriate

actions") (emphasis added); [2] Gary Barnes Memorandum of April 25, 2003 (stating "the reports I have reviewed are not conclusive" concerning whether Adams "raided" the Plan), *id.* at 386. By contrast, defendants presented testimony from an expert witness whose firm audited the Plan from 1985 through 2001 and who found no dealings between Adams and the Plan other than the August 31, 1986 distribution. Aplee. Supp. App. at 555-56.

"To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture or surmise." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). Even giving Cunningham the benefit of every reasonable inference, we conclude that defendants were entitled to summary judgment on Cunningham's claim that the additional transactions constituted improper inurement. [3]

---

[2] In any event, the district court struck this affidavit and, as will be seen, we uphold its action in doing so.

[3] In his opening brief, Cunningham asserts, citing generally Adams's deposition filed under seal, that Adams stated "under oath, during his deposition testimony, that over a period of time, he had made in excess of thirteen (13) loans from the PLAN." Aplt. Opening Br. at 12. Cunningham further implies that Adams has failed to repaid the loans. We have reviewed Adams' sealed deposition testimony, and it does not say that Adams made or obtained any such loans *from the Plan*. *See* Aplt. App., Vol. III at 43-45 (filed under seal). Cunningham's counsel has misstated the record.

### 4. Retaliation claim

Cunningham contends that after he requested an accounting of the Plan, defendants retaliated by firing him. He contends this violated ERISA § 510, which provides that "[i]t shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under [ERISA]." 29 U.S.C. § 1140.

At the time of Cunningham's discharge, he was the second shift finishing supervisor for defendant Central State Business Forms (CSBF) at its facility in Dewey, Oklahoma. The hours of the second shift are 3:00 to 11:00 p.m. Cunningham was required to ensure that production continued throughout his shift. He was generally required to remain on company premises during working hours, but was permitted to leave the premises to deliver customer orders to the United Parcel Service (UPS) office for shipping. Production employees at CSBF are paid for a full eight-hour shift, including mealtimes. They do not, however, have a set meal period and are expected to eat lunch at their work stations.

On May 9, 2001, at approximately 8:00 p.m., during Cunningham's assigned shift, a supervisor at CSBF and another CSBF employee observed Cunningham buying a lottery ticket at a convenience store in Caney, Kansas. Cunningham had gone to Caney after he completed a delivery at UPS. Significantly, the convenience store where he was sighted is located

approximately twelve miles *north* of the CSBF facility, across the Kansas state line, while the UPS facility is to the *south*, in Bartlesville, Oklahoma. Moreover, the UPS facility closes at approximately 7:00 p.m., an hour before Cunningham was seen in Caney.

The next day, Mattix reported to John Rose, General Manager at CSBF, that Mattix had seen Cunningham in Caney, Kansas. Rose discussed the matter with Cunningham's supervisor, Bill Mattix, and confirmed that Cunningham did not have permission to be at the convenience store and was not on company business when he was observed in Caney. Rose terminated Cunningham's employment, effective May 16, 2001.

Although Rose discussed the termination with Adams, Adams did not make the decision to terminate Cunningham. Cunningham presented no evidence that Rose discussed the pension plan with Cunningham or that Rose was aware at the time he terminated Cunningham's employment that Cunningham had made any inquiries concerning the Plan. Nor did Cunningham present any evidence that Rose discussed the Plan with Adams.

To prevail under section 510, an employee must demonstrate that the defendant had the specific intent to interfere with his ERISA rights. *See Phelps v. Field Real Estate Co.*, 991 F.2d 645, 649 (10th Cir. 1993). The employee can satisfy his burden by relying on either direct or circumstantial proof of the

defendant's intent. *See Garratt v. Walker*, 164 F.3d 1249, 1256 (10th Cir. 1998) (en banc). Cunningham chose to produce circumstantial evidence of defendants' intent by employing the well-known, burden-shifting analysis first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). See *Gitlitz v. Compagnie Nationale Air Fr.*, 129 F.3d 554, 559 (11th Cir.1997) (applying the *McDonnell Douglas* analysis to a section 510 claim).

Under the *McDonnell Douglas* method, the plaintiff must first establish a prima facie case of discrimination. See *Reeves v. Sanderson Plumbing Prods.*, Inc., 530 U.S. 133, 142 (2000). The district court found that Cunningham failed to establish a prima facie case of retaliation, because the record showed that Rose made the decision to terminate Cunningham's employment and because there was no showing that Adams or Rose even knew of Cunningham's request for an accounting of the Plan at the time of the termination. We agree with that analysis and therefore affirm summary judgment on Cunningham's § 510 retaliation claim.

**5. Striking of expert witness**

The district court struck the summary judgment affidavit of Cunningham's expert witness, Gary Barnes, for three reasons. First, it found that Cunningham had failed to comply with Fed. R. Civ. P. 26(a)(2) because the information Cunningham disclosed about Barnes's testimony was incomplete, vague, and unrelated to the opinion given in the affidavit. Second, the district court

questioned whether Barnes was qualified as an expert in the area of his testimony. Finally, the court determined that the vast majority of Barnes's affidavit concerned issues that were not properly before the court. The district court concluded that the affidavit was of no assistance to the court in determining the issues, and should therefore be stricken.

We review a district court's exclusion of evidence for an abuse of discretion. *Cartier v. Jackson*, 59 F.3d 1046, 1048 (10th Cir. 1995). In reviewing a court's determination for abuse of discretion, we will not disturb the determination absent a distinct showing it was based on a clearly erroneous finding of fact or an erroneous conclusion of law or manifests a clear error of judgment. *Id.* Having reviewed the district court's decision and the record under this standard, we find no abuse of discretion in the district court's decision to strike Barnes's affidavit. [4]

---

[4] The defendants also requested that the district court strike Barnes's trial testimony; in light of its grant of summary judgment, the district court correctly determined that this portion of the motion was moot.

-12-

The judgment of the district court is AFFIRMED. Appellant's motion to supplement the record is DENIED.

Entered for the Court

Robert H. Henry
Circuit Judge