**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 1, 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JOYCE L. JONES,

   Plaintiff - Appellant,

  v.

GENEVA PHARMACEUTICALS, INC.,
a Colorado corporation,

   Defendant - Appellee.

No. 04-1079
(D. Ct. No. 01-MK-1510 (PAC))
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, Chief Circuit Judge, **ANDERSON**, and **O'BRIEN**, Circuit Judges.

  Plaintiff-Appellant Joyce L. Jones was fired after she physically and verbally assaulted her coworker Marissa Bustamante while the two women were at work. As a result, Ms. Jones sued her former employer, Defendant-Appellee Geneva Pharmaceuticals, Inc. ("Geneva"), alleging that her employment was terminated in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. The jury entered a verdict for Geneva. Ms. Jones appeals the District Court's in

---

  [*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

limine rulings excluding evidence of Ms. Bustamante's employment record and Ms. Jones's offer to take a polygraph test. We take jurisdiction under 28 U.S.C. § 1291, GRANT Ms. Jones's motion to file a supplemental appendix, and, finding no abuse of discretion, AFFIRM.

## I. BACKGROUND

Ms. Jones began her employment with Geneva as a production line inspector in 1994. From 1998 until her termination on December 10, 2000, John Looney served as her immediate supervisor. On December 6, 2000, Ms. Bustamante, who was a Geneva employee in a different department, was temporarily assigned to the production-line inspection department as an accommodation to her recent surgery.

Although she held no supervisory role over Ms. Bustamante, Ms. Jones did not find Ms. Bustamante's performance satisfactory. As a result, Ms. Jones became very angry at Ms. Bustamante, yelled at her several times, and, according to Ms. Bustamante, physically shook her. These incidents were witnessed by other employees and were reported to various supervisors.

Mr. Looney conducted an investigation. He interviewed all involved, interviewed witnesses, reviewed written statements, and watched the security camera footage. During her interview with Mr. Looney, Ms. Jones insisted that she did not shake Ms. Bustamante. Indeed, she offered to take a polygraph test to demonstrate her veracity. Based on his investigation, however, Mr. Looney determined that Ms. Jones had seriously violated

Geneva's workplace policies; he therefore terminated her employment on December 8, 2000. At that time, Ms. Jones was sixty years old and, with the exception of this single incident, had a sterling work-history record at Geneva.

Ms. Bustamante, who was fifty years old at the time, was not disciplined as a result of the shaking incident. Her previous work history at Geneva, however, was far from spotless. Ms. Bustamante was involved in twenty-one incidents that resulted in reprimands or warnings. None of these actions, it is key to note, involved assaulting fellow employees. Rather, these infractions generally involved the use of foul language, failure to follow procedures, poor communications with coworkers, and paperwork errors. Further, because Ms. Bustamante had only been supervised by Mr. Looney on the day of the alleged assault, none of these incidents had been reported to Mr. Looney, nor had Mr. Looney ever disciplined Ms. Bustamante for them.

At the close of discovery, Geneva moved for summary judgment. In its opening brief, however, it did not argue that Ms. Bustamante's disciplinary record was inadmissible. In Ms. Jones's brief in opposition, she relied upon Ms. Bustamante's disciplinary record to argue that a genuine issue of fact existed as to whether Geneva's reason for firing her was pretextual. Only in its reply brief did Geneva argue that this evidence was inadmissible. The District Court denied the motion for summary judgment, in large part, because it would not consider Geneva's inadmissibility argument raised for the first time in a reply brief. *See Beaird v. Seagate Technology, Inc.*, 145 F.3d 1159,

1164–65 (10th Cir. 1998).

The parties then prepared for trial. In Geneva's trial brief, it again argued that Ms. Bustamante's disciplinary record was inadmissible. The District Court treated Geneva's argument as a motion in limine and partially granted it. It ruled that it would allow the evidence in, but only for the limited purpose of proving that Ms. Bustamante had a motive to lie about the shoving incident. The District Court held the evidence inadmissible as similarly-situated employee evidence because, except for the day of the incident, Ms. Bustamante was not supervised by the same people as Ms. Jones and because her disciplinary record, while poor, did not reflect any incidents as serious as Ms. Jones's physical assault. This evidence was introduced, and the District Court provided the jury with a limiting instruction consistent with its ruling.

Geneva also moved in limine to exclude as evidence Ms. Jones's offer to take a polygraph test to demonstrate that she did not shove Ms. Bustamante. Although Ms. Jones sought to introduce evidence that she offered to take a polygraph test in an effort of bolster her credibility with the jury, she did not seek to introduce the results of any such polygraph test. The District Court granted Geneva's motion in full.

After a full trial, the jury returned a verdict for Geneva. Ms. Jones then filed a motion for a new trial. *See* Fed. R. Civ. P. 50(b). In her motion, she renewed her objections to the District Court's in limine rulings and argued that the in limine rulings were contrary to law of the case doctrine. The District Court denied this motion. Ms.

Jones timely appeals.

## II.  STANDARD OF REVIEW

We review the District Court's ruling on the exclusion of evidence for abuse of discretion.  *Cartier v. Jackson*, 59 F.3d 1046, 1048 (10th Cir. 1995).  We also review the District Court's denial of Ms. Jones's motion for a new trial for abuse of discretion. *United States v. Evans*, 42 F.3d 586, 593 (10th Cir. 1994).  Applying that standard, we will reverse the district court only if it "made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances."  *Moothart v. Bell*, 21 F.3d 1499, 1504 (10th Cir. 1994) (citation omitted).

## III.  DISCUSSION

*A.  Admissibility of Ms. Bustamante's Work History*

ADEA claims are reviewed under the burden-shifting framework delineated by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973).  *See Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 558–59 (10th Cir. 1996).  Under that framework, the plaintiff first has the burden to make a prima facie case of discrimination.  *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 531 (10th Cir. 1998).  The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for taking the adverse action against the plaintiff.  *Id.*  If the employer meets this burden, the plaintiff must show that the employer's articulated reasons are pretextual.  *Id.*

A plaintiff may establish pretext by showing "that [s]he was treated differently

from other similarly-situated employees who violated work rules of comparable seriousness." *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000).[1]  "An employee is similarly situated to the plaintiff if the employee deals with the same supervisor and is subject to the same standards governing performance evaluation and discipline" as the plaintiff.  *Id.* at 1232.  With respect to violations of work rules, "the comparison need not be based on identical violations of identical work rules." *English v. Colorado Dept. of Corrections*, 248 F.3d 1002, 1011 (10th Cir. 2001).  Instead, the relevant inquiry hinges on whether the violations are of equal gravity.  *Id.*

In this case, Ms. Jones sought to introduce Ms. Bustamante's work history to demonstrate that Ms. Bustamante, a significantly younger employee, was allowed to keep her job even though the two women were similarly situated and had violated similar workplace rules.  The District Court excluded Ms. Bustamante's work history as not relevant to establish pretext.  It did, however, find Ms. Bustamante's work history to be relevant as to Ms. Bustamante's credibility and allowed evidence of her work history to demonstrate this limited point.  On appeal, Ms. Jones argues that the District Court erred in excluding Ms. Bustamante's work history as irrelevant to her pretext argument.

Evidence is relevant if it has tends to prove or disprove "any fact that is of

---

[1] *Kendrick* involves a § 1981 claim, rather than a claim under the ADEA. Nonetheless, because ADEA claims follow the same *McDonnell Douglas* burden-shifting analysis as § 1981 claims, § 1981 cases are highly persuasive in the ADEA context.  *See O'Connor*, 517 U.S. at 311–12.  For the same reason, Title VII cases are similarly persuasive.  *Id.*

consequence" to the action. Fed. R. Evid. 401. Ms. Jones argues that Ms. Bustamante's work history is relevant to whether Geneva's reason for firing Ms. Jones was pretextual. Pretext based on the similarly-situated employee theory, the only theory Ms. Jones advances, may only be established when the plaintiff and the other employee have the same supervisor, are subject to the same disciplinary standards, and have violated work rules of similar seriousness. Ms. Jones, however, has not shown this to be the case. Ms. Bustamante had never committed an infraction of similar seriousness to Ms. Jones's physical assault. Further, excepting the day of the shoving incident, Ms. Jones and Ms. Bustamante did not share the same supervisor. As we held in *Kendrick*, such evidence simply does not constitute similarly-situated employee evidence. *See* 220 F.3d at 1232. Therefore, Ms. Bustamante's work history does not further any fact that is of consequence to the issue of pretext, and we hold that the District Court did not abuse its discretion by admitting Ms. Bustamante's work history only for the limited purpose of showing that Ms. Bustamante had a motivation to fabricate the shoving incident.

B. *Admissibility of the Offer to Take a Polygraph*

Ms. Jones next argues that the District Court erred by precluding Ms. Jones from testifying that she had offered to take a polygraph test when she also did not seek to admit the polygraph results. The District Court refused to admit this testimony because the court viewed it as an end run around *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) and because any probative value the testimony would have had was substantially

- 7 -

outweighed by the danger of unfair prejudice to Geneva. Fed. R. Evid. 403. The court did not abuse its discretion in excluding the testimony.

Polygraph tests are generally inadmissible in this circuit. *Palmer v. City of Monticello*, 31 F.3d 1499, 1506 (10th Cir. 1994). If a party seeks to admit a polygraph test, that party must satisfy the criteria for admission under *Daubert*. *United States v. Call*, 129 F.3d 1402, 1404 (10th Cir. 1997). For this same reason, we agree with the District Court that testimony establishing that Ms. Jones simply offered to take a polygraph test is also inadmissible:

> By offering such evidence, the plaintiff intends the jury to presume that her submission to a polygraph examination would have revealed the truth. In other words, the probative value of the plaintiff's proffer is dependent upon the jury believing that the polygraph examination is a reliable indicator of honesty. . . . The plaintiff, however, has no intention of making the rigorous showing of the examination's reliability and effectiveness under *Daubert* or [Fed. R. Evid.] 702. Thus, under these circumstances, permitting the plaintiff to testify as to her offer without first qualifying the polygraph testing under *Daubert* would be improper.

Moreover, given that the probative value of Ms. Jones's proffered testimony rides on the reliability of the polygraph itself and that Ms. Jones does not wish to demonstrate the polygraph's reliability or effectiveness, we agree with the District Court that this evidence's probative value is substantially outweighed by the danger of unfair prejudice to Geneva. Therefore, we find no abuse of discretion in prohibiting Ms. Jones's proffered testimony that she offered to take a polygraph.

*C.      Law of the Case Doctrine*

Finally, Ms. Jones argues that because she survived summary judgment on the theory that Ms. Bustamante's work history created a genuine issue of material fact regarding pretext, the admission of Ms. Bustamante's work history is law of the case. In essence, law of the case doctrine requires that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Phelps v. Hamilton*, 122 F.3d 1309, 1322 (10th Cir. 1997) (quotations omitted). Here, however, the District Court did not decide upon the admissibility of Ms. Bustamante's work history until after refusing to grant summary judgment. Indeed, the District Court explicitly stated that Ms. Jones survived summary judgment—not because it ruled on the merits that Ms. Bustamante's work history was admissible—but because it would not consider Geneva's inadmissibility argument that was raised for the first time in a reply brief. Hence, the first time the court ruled on admissibility was in the in limine motion, rendering the law of the case doctrine inapplicable. Because we find no abuse of discretion regarding the exclusion of evidence or application of law of the case doctrine, we affirm the District Court's denial of Ms. Jones's motion for a new trial.

## IV.  CONCLUSION

We GRANT Ms. Jones's motion to file a supplemental appendix and, for the foregoing reasons, AFFIRM the District Court's rulings.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Chief Circuit Judge