**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 7 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

CENTRA, INC., a Delaware
corporation with its principal place of
business in Michigan; M. J.
MOROUN, a Citizen of Michigan;
NORMAN E. HARNED, a citizen of
Michigan; RONALD W. LECH; CAN-
AM INVESTMENTS, LTD.; and
AMMEX, INC., a Michigan
corporation,

     Plaintiffs-Appellants/
     Cross-Appellees,

v.

         Nos. 98-6134
             98-6145
             98-6164
             98-6166
     (D.C. No. 92-CV-1301)
       (W.D. Okla.)

CHANDLER INSURANCE COMPANY LTD., a Cayman Islands corporation with its principal place of business in the Cayman Islands; CHANDLER INSURANCE COMPANY LTD., (BARBADOS); CHANDLER (USA) INC., an Oklahoma corporation with its principal place of business in Oklahoma; W. BRENT LAGERE, a citizen of Oklahoma; BENJAMIN T. WALKINGSTICK, a citizen of Oklahoma; BRENDA B. WATSON PAIR, formerly known as Brenda B. Watson, a citizen of Oklahoma; RICHARD L. EVANS; MARK T. PADEN, a citizen of Oklahoma; ROBERT L. RICE, a citizen of Arkansas; GREGORY K. PRICE, as personal Representative of the Estate of L. Keith Price; DAVID MCLANE, a citizen of Texas; R. PATRICK GILMORE, a citizen of Oklahoma; MARVEL LIST, Trustee of the W. Brent LaGere Irrevocable Trust, an Oklahoma trust; W&L Holding Corp., an Oklahoma corporation with its principal place of business in Oklahoma; WINDSOR ACQUISITION CORP., an Oklahoma corporation with its principal place of business in Oklahoma; NATIONAL AMERICAN INSURANCE COMPANY; NAICO INDEMNITY; CHANDLER AVIATION, INC.,

Defendants-Appellees,

DURAROCK UNDERWRITERS, LTD.,

     Counter-Defendant,

     and

W. BRENT LAGERE, a citizen of Oklahoma; BENJAMIN T. WALKINGSTICK, a citizen of Oklahoma; BRENDA B. WATSON-PAIR formerly known as Brenda B. Watson, a citizen of Oklahoma; RICHARD L. EVANS; MARK T. PADEN, a citizen of Oklahoma; ROBERT L. RICE, a citizen of Arkansas, as Personal Representative of the Estate of L. Keith Price, GREGORY K. PRICE, as Personal Representative of the Estate of L. Keith Price,

     Cross-Appellants.

---

## ORDER AND JUDGMENT[*]

---

Before **TACHA**, **McKAY**, and **ANDERSON**, Circuit Judges.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After a lengthy and complex jury trial in which Plaintiffs CenTra, Inc., et al., won on some claims and Defendants Chandler Insurance Co., et al., won on other claims, each side made several post-trial motions.[1] The district court resolved those motions, and these appeals of its legal rulings followed. The parties brought their original claims in federal district court under diversity, federal question, and supplemental jurisdiction. We exercise jurisdiction pursuant to 28 U.S.C. § 1291.

Plaintiffs are involved in the trucking business and Defendants are involved in the insurance business. Plaintiffs and Defendants worked together for many years as their businesses grew; their relationship was close and symbiotic until they had a falling out. From that time, the parties "have spent approximately six years in litigation around the country, including multiple lawsuits in state and federal courts in at least four states." Appellant's App., Vol. 3 at 1081.[2]

The claims in the original action that are relevant to this appeal involve

[1]In this opinion, we will refer to the Plaintiffs-Appellants/Cross-Appellees as Plaintiffs and Defendants-Appellees/Cross-Appellants as Defendants. When appropriate, we will distinguish Defendants by employing the three groupings used by the district court, referring to the Defendants as Chandler companies, including Chandler Insurance, et al.; the individual defendants, who were directors, officers, and members of management for the entire family of Chandler companies; and Rice and Price, who served only as directors of Chandler Insurance. See Appellant's App., Vol. 3 at 1082.

[2]The district court noted that the parties "appear to have the resources and the will to continue their disputes in the courts indefinitely." Appellant's App., Vol. 3 at 1081.

(1) allegations brought by Plaintiffs against all three groupings of Defendants, the Chandler companies, the individual defendants, and Rice and Price, for (a) breaching stock purchase and stock exchange agreements in a 1988 stock transaction and (b) violating federal securities laws in a 1990 offering of Chandler Insurance stock;[3] (2) derivative claims brought by Plaintiffs against the individual defendants and Rice and Price for breach of fiduciary duties;[4] and (3) "insurance cancellation claims" brought by Plaintiffs against the Chandler companies. Id. at 1087. On appeal, each party essentially asserts that the district court was correct in granting its particular post-trial motions and/or denying the motions of its opponents but erred in denying its post-trial motions and/or granting the motions of its opponents.

## I.

In their first claim on appeal, Plaintiffs argue that the district court erred when it granted the Chandler companies' motion to amend the judgment and ordered Plaintiffs to return 1,142,625 shares of Chandler stock upon receipt of the $6,882,500 judgment awarded by the jury on the breach of contract claim.

---

[3]The district court and parties identify these as the first, second, third, fourth direct claims.

[4]The district court and parties identify these as the eighth, twelfth, and fourteenth derivative claims.

Plaintiffs had acquired the 1,142,625 shares under the 1988 stock purchase and exchange agreements executed with Defendants. Plaintiffs contend that by amending the judgment the district court exceeded the bounds of its authority and controverted the intent of the jury. They claim that, because the stock acquired under the 1988 agreements is presently worth about $2 million more than the judgment amount awarded by the jury, the district court's amendment turned what was actually a judgment for them as prevailing parties into a "sale of [their] shares to the wrongdoers–at a market discount of nearly $2 million." Plaintiffs-Appellants' Opening Br. at 23.

"We review a district court's ruling on a Fed. R. Civ. P. 59(e) motion under an abuse of discretion standard." Phelps v. Hamilton, 122 F.3d 1309, 1324 (10th Cir. 1997).

> Under the abuse of discretion standard, a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances. A Rule 59(e) motion to alter or amend the judgment should be granted only "'to correct manifest errors of law or to present newly discovered evidence.'"

Id. (citations omitted). In the case at hand, the district court stated that its ruling was necessary "to avoid a double recovery to plaintiffs." Appellants' App., Vol. 3 at 1099. It explained that, "[u]nless the judgment is amended, plaintiffs would receive monetary damages approximately equivalent to the amount they paid for

-6-

the Chandler stock, but would also be allowed to retain the stock." Id.

The resolution of this issue turns on the district court's interpretation of the jury's award as an award of rescission. Plaintiffs argue that the district court should not have required the return of stock to the Chandler companies, i.e., should not have interpreted and amended the judgment as one for rescission, because the rescission remedy "was not sought in the Pretrial Order, submitted to the jury, or presented at trial." Plaintiffs-Appellants' Opening Br. at 27. Our review of the record demonstrates otherwise.

First, the Pretrial Order's summary of the 1988 claim at issue states that Plaintiffs sought a judgment against the Chandler companies "for money damages *and/or rescission* due to alleged breaches of the Stock Purchase and Stock Exchange Agreements." Appellants' App., Vol. 2 at 699-700 (emphasis added). In addition, the testimony of Mr. Manuel J. Moroun, founder and executive officer of CenTra and named plaintiff, indicates that rescission was presented in the course of Plaintiffs' case. Mr. Moroun testified that he was seeking rescission of the 1988 stock agreements and the return of his purchase price. See Appellees' Jt. Supp. App., Vol. 4 at 1147-48. Most significantly, Plaintiffs' closing argument completely dispels their claim that rescission was not submitted to the jury. On at least three occasions in closing argument, Plaintiffs' counsel explained to the jury that Plaintiffs were seeking "to rescind [their] 1988 stock

purchases and the stock exchange that occurred in 1988," id. at 1233, and that one of Plaintiffs' claims included "a claim to rescind [their] $5 million investment in the stock that [they] originally bought . . . in '88 and the $1,760,000 more that [they] bought in '88." Id. at 1238; see also id. at 1234 (arguing that Plaintiffs "want[] . . . simply to give back the stock").

The reasons Plaintiffs' counsel had for arguing rescission before the jury are perfectly obvious. At the time of the purchase and exchange agreements, Plaintiffs acquired shares in the Chandler companies that were worth a price value of $8.8125 per share,[5] see Appellants' App., Vol. 4 at 1240, but, at the time of trial, the value of their investment hovered around $5.6875 per share. See Appellees' Jt. Supp. App., Vol. 4 at 1242. Rescission was, therefore, a lucrative remedy, and it was an understandable jury argument given the nature of Plaintiffs' breach of contract claim as one in which Plaintiffs argued that the value of their investment was not what Defendants promised it would be. That the value of those shares has since rebounded,[6] see id. at 1241, and that a judgment of the

---

[5]This price per share value was not the price paid for the stock, which is not easily ascertained given that a large portion of the stock was exchanged. The actual price paid is not necessarily relevant, however. Plaintiffs' claim concerned the value of the stock; that value at the time of the transaction was set forth in the 1988 purchase and exchange agreements.

[6]The price of Chandler shares on October 1, 1998 (a date between the filing dates of Plaintiffs' Opening Brief and Defendants' Joint Answer Brief) was $7.1875 per share.

United States District Court for the District of Nebraska against CenTra recently ordered a complete divestiture of Plaintiffs' Chandler stock, see Appellees' Jt. Answer Br. at 13; National Am. Ins. Co. v. CenTra, Inc., 151 F.3d 780, 786-87 (8th Cir. 1998) (affirming the district court's judgment against CenTra which ordered the complete divestiture of its Chandler holdings), turns Plaintiffs' counsel's trial strategy on its head, but it does not affect our treatment of the judgment in this case.[7] The record plainly demonstrates that the jury had a substantial basis for awarding Plaintiffs the rescission of their 1988 purchase and exchange agreements.

In an attempt to bolster their argument, Plaintiffs point out that the relevant jury instruction and verdict form submitted to the jury prior to its deliberations did not mention rescission as a possible remedy on the 1988 claim. See Appellants' App., Vol. 2 at 774 (Jury Instruction No. 40); id., Vol. 3 at 818 (General Verdict Form at 4). During the course of its deliberations, however, the jury submitted an inquiry to the court asking whether "the right to rescind stock in favor of plaintiff allow[s] all stock purchases to be rescinded or only [the] 1990 stock purchases." Appellees' Jt. Supp. App., Vol. 2 at 547. This inquiry put

_____

[7]Surely the possibility that the value of a disputed contract's subject matter might subsequently rebound is a common risk associated with seeking a rescissory remedy. Indeed, a risk associated with any litigation is that a party may get what it asks for.

Plaintiffs' counsel on notice that the jury was confused by counsel's insistence for rescission during closing arguments even when that remedy was not included in the jury instructions on the 1988 claim. The district court responded to the jury's inquiry instructing: "[Y]ou have all the law in evidence before you that is admitted in this case." Id. at 548. At that point, instead of acquiescing to the district court's response to the jury's query, see Appellants' App., Vol. 14 at 4743, Plaintiffs' counsel should have affirmatively requested an instruction that would have clarified his inconsistent positions to the jury. He did not clarify his position or request a jury instruction to clear up the jury confusion he induced, and, therefore, Plaintiffs have no grounds to complain that the jury awarded rescission on the 1988 claim and that the district court interpreted the jury's verdict as rescissory. See, e.g., Cypert v. Baker, 399 F.2d 927, 930 (10th Cir. 1968) ("[I]f there [was] error, it came about by the maneuvering of appellant's own counsel . . . . [T]he case is clearly within the doctrine that a party may not complain on appeal of errors which he induced or invited.").

In fact, as Defendants' brief makes clear by citing to Trial Exhibit No. 2403, an illustrative Schedule of CenTra Group's Acquisition of Chandler Stock, see Appellees' Jt. Supp. App., Vol. 4 at 992, no other interpretation of the jury's verdict makes sense. On the 1988 claim, the jury awarded Plaintiffs the valued amount of CenTra's pre-1990 investment in Chandler companies, $6,882,500. By

-10-

doing so, the jury expressed its intent to award Plaintiffs the rescission of their pre-1990 investment transactions. The district court exercised its discretion to amend and correct the judgment in conformity with the jury's rescissory intent. Moreover, the purpose of the district court's amendment was properly to prevent double recovery–a manifest error of law. See, e.g., MidAmerica Fed. Sav. & Loan Ass'n v. Shearson/American Express, Inc., 962 F.2d 1470, 1473 (10th Cir. 1992) ("It is undisputed that a plaintiff generally may not double recover damages."); accord Ambassador Hotel Co. v. Wei-Chuan Inv., 189 F.3d 1017, 1030 (9th Cir. 1999) (holding that in securities fraud cases "[t]he district court may apply a rescissory measure of damages in appropriate circumstances" and vacating a compensatory damages award because it constituted double recovery); Abou-Khadra v. Mahshie, 4 F.3d 1071, 1079 (2d Cir. 1993) ("[D]ouble recovery is an obvious mistake of law."). We conclude that the trial court's ruling was not an abuse of discretion.

Plaintiffs further argue that, even if it was not an abuse of discretion to amend Plaintiffs' judgment to require that they return their Chandler stock, the district court erred by requiring the return of more shares than were acquired in the actual 1988 purchase and exchange agreements. Essentially, Plaintiffs assert that the district court's calculation of returnable shares should not have included those shares obtained as stock dividends in 1989 and shares acquired before 1990

-11-

by CenTra subsidiaries in transactions unrelated to the 1988 stock agreements. The district court rejected Plaintiffs' arguments on this point because it found the Chandler companies' calculation of the subject shares more persuasive in the context of the jury award at issue. See Appellants' App., Vol. 3 at 1099. We agree with the district court.

The jury awarded Plaintiffs the purchase price of their entire pre-1990 investment in the Chandler companies–an amount totaling $6,882,500. In addition to the 874,100 shares acquired in the 1988 stock exchange and purchase agreements, which represented $6,762,500 of the total award, the pre-1990 investment in the Chandler companies included 20,000 shares valued at $120,000 bought by Can-Am Underwriters, Ltd., a CenTra subsidiary, on July 10, 1987; 20,000 shares obtained by Ammex, Inc., another CenTra subsidiary, as part of an exchange of stock warrants on December 28, 1988; and 228,525 shares obtained on June 8, 1989, as stock dividends from the holdings of CenTra, Can-Am, and Ammex. See Appellees' Jt. Supp. App., Vol. 4 at 992.[8] These shares either were part of or flowed directly from Plaintiffs' 1988 holdings in the Chandler companies. In other words, the jury complied with the general theme of Plaintiffs' closing argument and returned all the pre-1990 stock acquired by

_____

[8]In its calculation of Plaintiffs' pre-1990 Chandler holdings from the schedule included in the record, it appears that the jury did not include shares that were held by Norman Harned, Agnes Moroun, or Ronald Lech.

-12-

Plaintiffs to the Chandler companies. In its review of the jury's rescissory award, and to prevent double recovery, the district court did not err in calculating 1,142,625 as the correct number of shares to be returned in exchange for the $6,882,500 jury award.

## II.

In their second argument on appeal, Plaintiffs contend that the district court erred in failing to award Plaintiffs prejudgment interest on damages awarded for the 1988 breach of contract and 1990 securities violation claims. Because the "decision whether or not to allow prejudgment interest rests within the sound discretion of the trial court," our review on appeal is "whether the trial court abused its discretion in awarding–or in declining to award–prejudgment interest." U.S. Indus., Inc. v. Touche Ross & Co., 854 F.2d 1223, 1255 n.43 (10th Cir. 1988), implied overruling on other grounds recognized by Anixter v. Home-Stake Prod. Co., 77 F.3d 1215, 1231 (10th Cir. 1996). The issue of prejudgment interest on the 1988 breach of contract claim is governed by state law; prejudgment interest on the 1990 securities claim is controlled by federal law. See id. at 1254-55.

## A.

The district court refused to award prejudgment interest on the 1988 claim because the amount of damages resulting from the breach of contract was not ascertainable prior to judgment. In its ruling, the district court applied Oklahoma state law. That law prohibits any award of prejudgment interest absent statutory authorization. See Dyco Petroleum Corp. v. Smith, 771 P.2d 1006, 1009 (Okla. 1989). The applicable statute provides that "[a]ny person who is entitled to recover damages certain, or capable or being made certain by calculation, . . . is entitled also to recover interest thereon." Okla. Stat. Ann. tit. 23, § 6. The general rule, in other words, is that "prejudgment interest will not be allowed unless the amount recovered was capable of ascertainment before judgment through calculation by using well-established market values." Cook v. Oklahoma Bd. of Pub. Affairs, 736 P.2d 140, 153 (Okla. 1987).

"Damages are not certain where their calculation is left to the best judgment of the fact-finder." Transpower Constructors v. Grand River Dam Auth., 905 F.2d 1413, 1422 (10th Cir. 1990) (applying Oklahoma law) (citations omitted). In the case at hand, the jury instructions left to the jury the issues of whether the Chandler companies breached the contractual provisions at issue and, if so, what "[d]amages to [Plaintiffs] as a result of such material breach or breaches" were warranted. Appellants' App., Vol. 2 at 774. The instructions did not specify a damages amount or a method of calculating damages by well-

-14-

established market values.  Indeed, Plaintiffs never specified the amount of damages they sought as a remedy for the Chandler companies' breach of contract, not even in their pleadings.  See, e.g., id. at 699-700.  The best argument Plaintiffs assert to support their claim that the damages they sought were ascertainable can be made only in complete disregard of the confusion they created during the presentation of their case by requesting unspecified damages in one breath and rescission in the next.  In fact, Plaintiffs never presented the jury with a coherent theory of damages on their 1988 breach of contract claim.  They left the issue to the jury.  The fact that the jury awarded Plaintiffs an amount equal to their entire pre-1990 investment in the Chandler companies does not transform Plaintiffs' claim for unspecified damages into a claim for a liquidated amount.  Because Plaintiffs have failed to demonstrate that their award for damages on the 1988 claim was ascertainable before judgment, cf. Cook, 736 P.2d at 153, we cannot say that the court abused its discretion by not awarding prejudgment interest.

**B.**

Plaintiffs also assert that the district court should have awarded them prejudgment interest on their claim involving allegations that the Chandler companies violated federal securities law in their 1990 public offering.  In

resolving this part of Plaintiffs' motion for prejudgment interest, the district court applied the federal standard which "is governed by a two-step analysis. First, the trial court must determine whether an award of prejudgment interest would serve to compensate the injured party. Second, when an award would serve a compensatory function, the court must still determine whether the equities would preclude the award of prejudgment interest." U.S. Indus., 854 F.2d at 1257. The district court refused to award prejudgment interest on the 1990 claim in the second step of its analysis, explaining that such an award "would constitute an inequitable windfall to plaintiffs." Appellants' App., Vol. 3 at 1098.

The district court's conclusion in this regard was based on its interpretation of the jury award. Plaintiffs' relevant claim was for rescission of their 1990 investment in the Chandler companies. See id., Vol. 2 at 770 (Jury Instruction No. 37 setting forth rescission as the remedy for Plaintiffs' claim). Plaintiffs invested $4,916,250 on March 13, 1990, and acquired 517,500 shares of Chandler stock. See Appellees' Jt. Supp. App., Vol. 4 at 992. The jury awarded $5,099,133.37 on Plaintiffs' 1990 claim and ordered them to return the 517,500 shares to Chandler Insurance. See Appellants' App., Vol. 3 at 834. Thus the amount of damages the jury awarded in rescinding the 1990 transaction exceeded the amount of Plaintiffs' investment by $182,883.37. The district court interpreted this result as an award for rescission plus some interest. It did not

-16-

award Plaintiffs the prejudgment interest they requested in their post-trial motion for "the reasons stated in Chandler companies' brief." Id. at 1098. In that brief, the Chandler companies explained that because the actual amount awarded by the jury for the 1990 claim exceeded the amount required under Plaintiffs' rescission theory the jury's award included prejudgment interest, and, therefore, any additional prejudgment interest award amount would constitute double recovery. See Appellees' Jt. Supp. App., Vol. 2 at 564-66. The district court's conclusion in this regard was supported by the fact that Plaintiffs extensively argued the issue of prejudgment interest to the jury in their closing argument. See id.

Having thoroughly reviewed the record, it seems that a more likely explanation of the jury's verdict on the 1990 claim is that the jury intended to award rescission of CenTra's March 13, 1990 transaction but mistakenly arrived at the $5,099,133.37 sum by adding up the value of all Chandler stock purchased by the CenTra Group during the year 1990. See id., Vol. 4 at 992. In addition to CenTra's March 13, 1990 investment, these holdings included stock purchased by Ammex in four transactions occurring between September 26, 1990, and October 3, 1990; stock purchased by Agnes Moroun on September 25, 1990; and stock purchased by the MJM Trust for Matthew Moroun on September 27 and 28,

1990.[9]  See id.  The total value of these investments equaled $5,099,133, leaving a difference of only 37 cents between this calculation and the actual jury award.

Even though we believe this interpretation is more plausible, we do not have the "definite and firm conviction" that the district court clearly erred in its interpretation of the jury's award.  Manning v. United States, 146 F.3d 808, 812 (10th Cir. 1998).  The nebulous nature of the jury award leaves too many unanswered questions about the jury's award.  First, there is the 37 cents difference between the jury's award and our calculation.  In the absence of detail accompanying the jury award, there is no clear explanation that would account for that difference.  Additionally, we are left with questions about why the jury included the value of stock held by non-corporate entities listed on the CenTra Group schedule (Agnes Moroun and the MJM Trust for Matthew Moroun) in its calculation of the award for the 1990 claim but left out the value of stock held by those same non-corporate entities in its calculation of the rescissory award on the 1988 claim.

The fact remains that the jury awarded an amount greater than the purchase price of the stock at issue in the 1990 claim.  The jury was instructed on

---

[9]Agnes Moroun and Matthew Moroun are presumably related to CenTra's founder Manuel J. Moroun, which would explain why their acquisitions are included in the Schedule of CenTra Group's Acquisition of Chandler Stock, Appellees' Jt. Supp. App., Vol. 4 at 992.

prejudgment interest, an aspect of Plaintiffs' case which was argued extensively. On the state of such a record, then, and in the absence of any definite and firm conviction otherwise, we cannot say the district court clearly erred in finding that the extra amount awarded by the jury represented prejudgment interest. Cf. id. Having so concluded, it was not an abuse of discretion to surmise that any additional award of prejudgment interest would be a double recovery, i.e., an "inequitable windfall," Appellants' App., Vol. 3 at 1098, to Plaintiffs and, therefore, would violate the criteria of the federal standard. The district court did not abuse its discretion in denying either of Plaintiffs' motions for prejudgment interest.

### III.

Plaintiffs' next claim on appeal concerns the district court's grant of judgment as a matter of law in favor of Defendants on Plaintiffs' three "'insurance cancellation claims,'" namely, breach of contract, tortious interference with business contract, and tortious interference with business expectancies. Id. at 1087. These claims apparently arose during the course of the parties' litigation when one of the Chandler companies that insured Plaintiffs' trucking business sent several cancellation notices to Plaintiffs' customers, disrupting Plaintiffs' business with these customers. Soon after the notices were

sent out, Plaintiffs sought an injunction from a federal court in Michigan to prevent the actual cancellation of its insurance policies. The Michigan federal court granted the injunction. Plaintiffs subsequently sought to consolidate the three claims rising from that dispute into this litigation to recover for the "customer disruption" that the cancellation notices caused. See Plaintiffs-Appellants' Opening Br. at 13.

The district court granted judgment as a matter of law and denied Plaintiffs' post-trial motion for a new trial on the insurance cancellation claims because Plaintiffs "lack[ed] any evidence of damages" suffered as a result of the Chandler company's action. Appellees' Jt. Supp. App., Vol. 2 at 575; see also Appellants' App., Vol. 3 at 1098 (incorporating reasons stated in Chandler companies' brief into the district court's disposition). On appeal, Plaintiffs claim that the district court erred when it dismissed those insurance cancellation claims and denied their motion for a new trial. Because both those rulings turned on Plaintiffs' lack of evidence, Plaintiffs further argue that the district court erred by excluding the evidence they presented that would have established damages that were caused by the cancellation notices.

Our review of the district court's grant of Defendants' motion for judgment as a matter of law is de novo, applying the same standards as the district court. See Baty v. Willamette Indus., Inc., 172 F.3d 1232, 1241 (10th Cir. 1999). "[W]e

must enter judgment as a matter of law in favor of the moving party if 'there is no legally sufficient evidentiary basis . . . with respect to a claim or defense . . . under the controlling law.'" Id. (quoting Harold Stores, Inc. v. Dillard Dep't Stores, Inc., 82 F.3d 1533, 1546-47 (10th Cir. 1996)). "A district court's denial of a motion for a new trial is reviewed for an abuse of discretion." Skaggs v. Otis Elevator Co., 164 F.3d 511, 514 (10th Cir. 1998), cert. denied, __ U.S. __ , 120 S. Ct. 44 (1999). Our review of a district court's exclusion of evidence is also for abuse of discretion. See Cartier v. Jackson, 59 F.3d 1046, 1048 (10th Cir. 1995).

> In reviewing a court's determination for abuse of discretion, we will not disturb the determination absent a distinct showing it was based on a clearly erroneous finding of fact or an erroneous conclusion of law or manifests a clear error of judgment. In doing so, we give deference to the district court's evidentiary rulings.

Id. (citations omitted). We turn first to the evidentiary rulings at issue.

Plaintiffs made several unsuccessful attempts over the course of the trial to present evidence of damages in support of the insurance cancellation claims. They proffered testimony and documentation that CenTra suffered damages in its own capacity from the cancellation notices and that those damages not suffered by CenTra in its own capacity were assigned to CenTra by its subsidiary companies who were not parties to the litigation. On the assignment claim, Plaintiffs encountered difficulty when they failed to produce any documentary evidence before trial in response to Defendants' discovery request. To compound

-21-

Plaintiffs' problems, the district court denied their pre-trial motion for leave to amend their complaint to add parties. See Appellees' Jt. Supp. App., Vol. 2 at 480-81. During the trial, Plaintiffs attempted to introduce evidence of the alleged assignment. However, the district court excluded Plaintiffs' exhibit because it did not meet a sufficient standard of reliability. See Appellants' App., Vol. 12 at 3942-52.

The district court's rulings denying Plaintiffs leave to amend and excluding evidence of the alleged assignment were significant because a previous evidentiary ruling granting two of Defendants' motions in limine, see id. at 3951-52, seriously limited Plaintiffs' ability to prove damages suffered by CenTra in its own capacity. The court's ruling on the first of Defendants' motions in limine prohibited Plaintiffs from introducing evidence of CenTra's lost-profits damages on the insurance cancellation claims without proving that those lost profits actually occurred. On the basis of Fed. R. Civ. P. 17(a), the court ruled on the second motion to prohibit Plaintiffs from making reference during the presentation of their case to damages allegedly incurred by non-parties. As it turned out, the combination of the district court's evidentiary rulings denying Plaintiffs' attempts to establish CenTra as an assignee, rejecting their attempts to prove damages by unsubstantiated testimony, and depriving them of the opportunity to present evidence of damages incurred by non-parties was fatal to

Plaintiffs' insurance cancellation claims.  The court construed these rulings to reject every one of Plaintiffs' attempts to prove that CenTra suffered damages as a result of the cancellation notice issuance.  See, e.g., id., Vol. 14 at 4615-31 (excluding evidence of CenTra damages, including testimony of Norman Harned, CenTra's chief financial officer); id. at 4632-33 (rejecting the offer of proof contained in the testimony of Plaintiffs' witness Van Conway, CPA).

Having reviewed the record, we conclude that the district court did not abuse its discretion in the evidentiary rulings at issue.  In the case of the alleged assignment, we are satisfied that the district court properly excluded Plaintiffs' exhibit produced on the eve of trial.  This evidence was not listed as a pretrial exhibit; Plaintiffs failed to produce it during discovery; and it was not properly authenticated.  In short, Plaintiffs' assignment exhibit was not reliable. Moreover, the district court properly excluded evidence of damages allegedly incurred by CenTra's subsidiaries as a result of the cancellation notices.  Because they were not parties to the litigation,[10] those subsidiaries did not qualify as real parties in interest.  See Fed. R. Civ. P. 17(a).  Plaintiffs' legal assertion on this point, that "where operations of parent and subsidiary companies overlap, the parent may assert claims for damages resulting from injury to the subsidiary" is

---

[10]Plaintiffs do contest the district court's ruling denying them leave to amend to add CenTra subsidiaries as named parties.

incorrect.[11] Plaintiffs-Appellants' Opening Br. at 37. It is well established that, "where the business or property allegedly interfered with by forbidden practices is that being done and carried on by a corporation, it is that corporation alone . . . who has a right of recovery, even though in an economic sense real harm may well be sustained [by other entities as a result] . . . of such wrongful acts." Martens v. Barrett, 245 F.2d 844, 846 (5th Cir. 1957); accord Jones v. Ford Motor Co., 599 F.2d 394, 397 (10th Cir. 1979) (applying the "well stated" rule from Martens to hold that shareholders and employees do not have standing to sue for antitrust violations that injure a corporation). A parent corporation may not pierce its own corporate veil to render it the real party in interest. See Diesel Sys. v. YIP Shing Diesel Eng'g Co., 861 F. Supp. 179, 181 (E.D.N.Y. 1994) (applying

---

[11]Plaintiffs cite Love v. Reilly, 924 F.2d 1492, 1494 (9th Cir. 1991), and United States v. Lakeshore Terminal and Pipeline Co., 639 F. Supp. 958, 962 (E.D. Mich. 1986), for their proposition, but that authority is inapposite. Love did not involve allegations of overlapping business operation. Any discussion on point served only to note the inapplicability of language from Lakeshore. See Love, 924 F.2d at 1494 n.1. Lakeshore does not support Plaintiffs' proposition because the court in that case merely applied the real-party-in-interest doctrine to an Equal Access to Justice Act provision awarding attorneys fees to the "prevailing" small business parties in litigation against the government. See Lakeshore, 639 F. Supp. at 962. The court concluded that attorneys' fees were not available to the plaintiffs because even though the actions were nominally brought by a qualifying small business, the real party in interest was the parent corporation which did not qualify. See id. at 962-63. The thrust of its analysis presumed the parent had authority to bring the claim with its subsidiary and focused on the effect of bringing that claim. Our analysis differs by asking whether the parent has the authority in the first place.

New York law); <u>DiCesare v. Stuart</u>, 82 F.3d 425, 1996 WL 170176, at *2 (10th Cir. 1996) (Table) (applying Oklahoma law); <u>Mainord v. Sharp</u>, 569 P.2d 546, 548 (Okla. Ct. App. 1977). The mere fact that CenTra may have consolidated its financial statements, billings, or tax returns with its subsidiaries does not alter the force of this doctrine. <u>See</u> <u>Lowell Staats Mining Co. v. Pioneer Uravan, Inc.</u>, 878 F.2d 1259, 1264 (10th Cir. 1989) ("[W]e do not consider the fact of consolidated financial reports to be a sufficient basis to impose liability under the alter ego doctrine."). Finally, we are convinced that the district court properly excluded evidence that CenTra suffered damages in its own right because Plaintiffs could not establish either the fact or amount of those damages without resorting to speculation and conjecture. <u>See</u> <u>Kobe, Inc. v. Dempsey Pump Co.</u>, 198 F.2d 416, 425-26 (10th Cir. 1952) (reciting "two basic principles of the law of damages . . . : 1, the fact of damage must be established with reasonable certainty; 2, the amount of damages may not be based upon mere speculation and conjecture" (citations omitted)).

The district court's evidentiary rulings left Plaintiffs without any legally sufficient evidence of damages to present at trial. It is important to note, however, that while this was the effect of the district court's rulings, it was not the basis for them. The district court did not rule that Plaintiffs could not introduce evidence which was reliable. Plaintiffs simply failed to produce

evidence meeting the criteria of the federal evidentiary standard. See Appellants' App., Vol. 14 at 4621-24. That being the case, the record on appeal is devoid of any evidence suggesting that CenTra was assigned the claims of its subsidiaries or that it suffered damages in its own right. Since we have concluded that the court did not abuse its discretion in its evidentiary rulings, Plaintiffs clearly lacked any evidence of damages to support their insurance cancellation claims. Because damages are an essential element of these claims, we conclude that the district court properly granted judgment as a matter of law to Defendants and denied Plaintiffs' post-trial motion for a new trial.

## IV.

Plaintiffs' final claims on appeal concern their demand for attorneys' fees and costs and their contention that the district court erred by denying their motion for leave to amend their complaint in the latter part of the discovery stage of litigation. These claims of error were not presented to the district court in the same post-trial motion as the other claims that make up Plaintiffs' appeal.

## A.

Plaintiffs filed their motion for fees and costs on March 16, 1998, subsequent to the district court's Order Resolving Post-Trial Motions that was

-26-

entered on March 10, 1998.  See id., Vol. 3 at 1103.  The district court resolved the fees and costs motion on April 21, 1998, ordering all parties to bear their own costs and fees because "[t]here was . . . no single clear-cut 'prevailing party'" and "neither side . . . appeared to be acting in bad faith to any larger extent than the other."  Id. at 1145.  Plaintiffs appeal that ruling.  We may not consider Plaintiffs' appeal on this issue, however, because it is untimely.

Paragraph twenty-two of the district court's judgment on the merits, entered April 22, 1997, directed the parties to file any motion for attorneys' fees and costs "within fourteen days of the entry of this Judgment, provided however, if any party timely files [post-trial motions] . . . , the date for filing motions and briefs for costs and attorney fees shall be extended" twenty days following the court's final order resolving those motions.  Id. at 838-39.  Plaintiffs' motion to the district court for fees and costs was timely under this provision; it was filed six days following the last court order resolving post-trial motions.  Nonetheless, Plaintiffs filed their notices of appeal during the period in which the district court was considering their motion for fees and costs.  Those notices, filed March 23, 1998, specify that the appeal is from the district court's pre-trial order of July 9, 1996, and its orders of April 22, 1997, and March 10, 1998.  The notices did not specify, indeed they could not specify, an appeal from the district court's order resolving Plaintiffs' fees and costs motion because that order was not entered

until April 21, 1998. Plaintiffs subsequently failed to file a separate notice of appeal from the April 21, 1998 order. See Appellees' Jt. Supp. App., Vol. 4 at 1244-50. Accordingly, pursuant to Fed. R. App. P. 4(a)(1)(A), this court lacks jurisdiction to consider Plaintiffs' appeal of the district court's order resolving their motion for attorneys' fees and costs.

**B.**

We turn to the district court's denial of Plaintiffs' motion to amend their complaint. Our review is for abuse of discretion. See Ketchum v. Cruz, 961 F.2d 916, 920 (10th Cir. 1992). In other words, although Fed. R. Civ. P. 15(a) provides that leave to amend "shall be freely given when justice so requires," its granting remains within the sound discretion of the district court. See, e.g., Snider v. Circle K Corp., 923 F.2d 1404, 1409 (10th Cir. 1991).

In the order at issue, the district court did not give an express reason for denying Plaintiffs' motion but stated only that "no further amendments to pleadings should be allowed in this case absent extraordinary circumstances."[12]

---

[12]Because the district court allowed for amendments to the pleading in case of extraordinary circumstances (implicitly suggesting that Plaintiffs' motion lacked such circumstances), and because it stated that it had reviewed the parties' briefs, the district court did not violate the maxim of Foman v. Davis, 371 U.S. 178, 182 (1962), that "outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion," even though it

(continued...)

-28-

Appellants' App., Vol. 2 at 591. Its rationale for denying the motion is not difficult to reconstruct, however. Plaintiffs made their motion over a year and a half after the previous version of the complaint (the second amended complaint) had been filed without explaining the reason for their delay. The motion would have introduced a third amended complaint that differed from the second amended complaint only by adding two claims under the Racketeer Influenced Corrupt Organizations Act [RICO], 18 U.S.C. §§ 1961-1968. It did not address any new evidence or circumstances that gave rise to the RICO claims; in fact, the underlying facts set forth in asserting the new claims were the same as those contained in the first and second complaints. Other courts have noted that "with the passage of time and acceptance of multiple earlier amendments, a point is reached when the party seeking to amend must justify that request by more than invocation of the concept of [Fed. R. Civ. P. 15(a)]'s liberality." Te-Moak Bands of W. Shoshone Indians v. United States, 948 F.2d 1258, 1263 (Fed. Cir. 1991). Plaintiffs did not invoke any extraordinary circumstances in its motion to amend before the district court (or to this court on appeal) beyond the liberality of Rule 15(a). Given these considerations, we conclude that the district court did not

---

[12](...continued) did not lay out the rationale plainly. Indeed, as we explain in the ensuing discussion, the district court had an overriding justification in refusing to allow further amendment, namely, the further delay that granting Plaintiffs' leave would have caused.

abuse its discretion in denying Plaintiffs' motion for leave to amend.


## V.

We now turn to the issues raised in Defendants' cross-appeals. From the preceding discussion, the parties should have some sense of how reluctant we are to second-guess the discretion and judgment of the jury and the district court in a case as complex as this one. It is useful to remind the parties that our judicial system does not "have the resources to provide litigants with perfect trials, were they possible, and still keep abreast of its constantly increasing caseload." McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 553 (1984).

Defendants' cross-appeals concern the district court's rulings that the individual defendants and Rice and Price were not entitled either to judgment as a matter of law or to a new trial on the federal securities or breach of fiduciary duties judgments imposed against them. See Appellants' App., Vol. 3 at 1101. Though we set forth above that the standard of review on a motion for judgment as a matter of law is de novo, it is useful to review that standard here. We will reverse a district court's denial of a motion for judgment as a matter of law "only if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion." Wolfgang v. Mid-America Motorsports, Inc., 111 F.3d 1515, 1522 (10th Cir. 1997). In our review, "we may

-30-

not weigh the evidence, pass on the credibility of witnesses, or substitute our judgment for that of the jury." Id. Our review of the district court's ruling on a motion for a new trial is abuse of discretion. See Anaeme v. Diagnostek, Inc., 164 F.3d 1275, 1284 (10th Cir.), cert. denied, __ U.S. __ , 120 S. Ct. 50 (1999). "Where a new trial motion asserts that the jury verdict is not supported by the evidence, 'the verdict must stand unless it is clearly, decidedly, or overwhelmingly against the weight of the evidence.'" Id. (citations omitted).

**A.**

The jury found in favor of Plaintiffs and against the individual defendants and Rice and Price in the amount of $7 ($1 per defendant) for violating § 11(a) of the 1933 Securities Act in the course of Chandler companies' 1990 public offering. See Appellants' App., Vol. 3 at 815. The jury also found in favor of Plaintiffs and against the individual defendants and Rice and Price in the amount of $7 ($1 per defendant) for violating § 10(b) of the 1934 Securities Exchange Act and Rule 10b-5 of the Securities and Exchange Commission Rules in the course of the same 1990 offering. See id. at 817. We will refer to these claims as the first and third claims, respectively, reflecting the reference used by the parties and the district court.

Defendants begin their cross-appeal arguing that the district court erred in

not awarding judgment as a matter of law or new trial on these first and third claims. More specifically, they argue that the district court should have granted their motions because (1) Plaintiffs failed to present evidence of the proper measure of damages for both claims and the jury failed to follow its instructions on the issue of damages; (2) the evidence demonstrates that Plaintiffs had actual and/or inquiry notice of applicable Nebraska law that defeated their allegations of fraud on both claims and the jury was improperly instructed on this point; (3) Plaintiffs' claims were barred by a statute of limitations because they had notice of Defendants' misconduct earlier than determined by the jury; (4) Plaintiffs' claims never should have been sent to the jury because an Oklahoma due diligence provision, Okla. Stat. Ann., tit. 18, § 1027.E, provided an absolute defense to securities fraud claims where the directors relied on the advice and counsel of qualified experts in good faith; (5) the court or jury should have applied the doctrine of *in pari delicto*, i.e., equal fault, to the first claim to exculpate Defendants' conduct on the basis of Plaintiffs' equally culpable dealings; (6) Plaintiffs failed to prove the elements of materiality, scienter, and reliance on the third claim and therefore failed to establish all the elements of that cause of action; and (7) generally, the jury failed to follow its instructions on other affirmative defenses listed by Defendants, and its verdict was against the weight of the evidence.

Our first step in addressing Defendants' cross-appeal claims is to consider the applicable jury instructions composed by the district court with the parties' participation. Our review of the jury instructions on both the first and the third claims reveals that the issue of damages was left to the jury. See Appellants' App., Vol. 2 at 765-67, 771-73. The instructions set forth each element of the two claims, including the damages elements, and instructed the jury on the proper measures of damages. On the first claim that measure was "the differences [sic] between the price paid for the securities in 1990 and the value of the securities at the date suit was filed." Id. at 766. Likewise, the instruction on the third claim limited damages "to the actual–or compensatory–damages incurred," an amount calculated by "determin[ing] the difference between the price which CenTra, Inc. originally paid for [the stock in question] in 1990 and the actual value at that time."[13] Id. at 773. The instructions on both claims, however, did not preclude an award of nominal damages. In fact, the only limitation on a damages amount was that damages could not exceed the price paid by CenTra in the 1990 public offering. See id. at 766. We reject Defendants' contention that, by awarding Plaintiffs nominal damages against the individual defendants and Rice and Price

_____

[13]The jury instructions on the third claim also included an instruction on "loss causation," requiring Plaintiffs "to show that Defendants' misrepresentation or omission caused its damages–that is, caused the value of the stock to drop." Appellants' App., Vol. 2 at 772.

on the first and third claims, the jury failed to follow its instructions.

Defendants argue further that Plaintiffs failed to establish the element of damages required for the first and third claims; they contend that the failure of Plaintiffs' damages evidence is proven by the fact that the jury awarded only nominal damages. This argument does not follow, however, because there could be any number of valid rationales for the jury's award. See generally Dan B. Dobbs, Law of Remedies 191-94 (1973). The rationale most consistent with the jury's verdict in this case is that the jury awarded nominal damages against the individual defendants and Rice and Price on the first and third claims because it awarded rescissory damages against the Chandler companies on the second claim–a violation of § 12(2) of the 1933 Securities Act–rising from the same 1990 public offering. Any award greater than nominal damages against the individual defendants and Rice and Price, therefore, would have been precluded by the double recovery doctrine. See Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 203 (3rd Cir. 1990) (explaining that "plaintiffs obviously would not be entitled to any double recovery were they to succeed under alternative section 12(2) and rule 10b-5 theories of liability"). In any event, Defendants fail to convince us either that nominal damages were unwarranted or that liability was unproven. The jury's verdict indicates that the jury found the individual defendants and Rice and Price liable for culpable conduct underlying these

securities law violations.  The record contains sufficient evidence to support that verdict and the determination that Plaintiffs suffered an amount of damages equaling at least the purchase price of the entire transaction as a result of Defendants' conduct.  We will not disturb the jury's verdict on damages against Defendants on the first and third claims.

In their next argument, Defendants assert that Plaintiffs had notice of Nebraska law that defeated their allegations of fraud rising from the 1990 public offering.  To counter this point, Plaintiffs direct our attention to the testimony from CenTra's founder, Mr. Moroun, and its chief financial officer, Mr. Harned, that they did not have notice of Nebraska's filing requirement when purchasing Chandler companies' stock in the 1990 offering.  See Appellants' App., Vol. 12 at 3958-59; Vol. 14 at 4598-99, 4601-06.  This testimony was offered to support Plaintiffs' claims that they suffered from securities fraud in the course of the 1990 offering and to rebut Defendants' argument that Plaintiffs had notice of the Nebraska filing statute.  We conclude that this testimony is sufficient to support the jury's verdict and is susceptible to reasonable inferences supporting Plaintiffs' position on Defendants' post-trial motions.

We also conclude that the district court was not required to give the jury an affirmative defense instruction on the notice question.  A party is entitled to an affirmative defense instruction only if its evidence is sufficient as to all elements

-35-

of that defense.  See United States v. Smith, 63 F.3d 956, 966 (10th Cir. 1995),

vacated on other grounds, 516 U.S. 1105 (1996); see also Savino v. C.P. Hall Co.,

199 F.3d 925, 932-33 (7th Cir. 1999) (determining that defendant's evidence

merited an affirmative defense jury instruction because that evidence was

sufficient to establish all three elements of the defense).  On the basis of the

record in this case, we cannot say that the district court abused its discretion in

determining that Defendants' evidence was insufficient to meet this standard.

See, e.g., Davoll v. Webb, 194 F.3d 1116, 1131 (10th Cir. 1999).  Moreover, we

believe the district court's jury instructions in this case, as a whole, "correctly

stated the governing law and provided the jury with an ample understanding of

the issues and applicable standards."  Allen v. Minnstar, Inc., 97 F.3d 1365, 1368

(10th Cir. 1996).

We turn to Defendants' arguments on cross-appeal concerning the

affirmative defenses they raised based on the Oklahoma statute of limitations, the

due diligence provision found in Okla. Stat. Ann., tit. 18, § 1027.E, and the *in

pari delicto* doctrine.  The district court instructed the jury on all three defenses.

See Appellants' App., Vol. 2 at 803, 807-08.  Defendants contend that the district

court should have applied these defenses as a bar to the first and third claims and,

to the extent that the first and third claims were submitted to the jury

accompanied by these defenses, that the jury erroneously disregarded the

defenses. We turn first to the allegations of legal error. As the jury instructions make clear, the statute of limitations defense turned on when CenTra "possessed sufficient facts to put [itself] on notice or which should have put [itself] on notice of the claimed misrepresentation or omission," id. at 803; the due diligence defense turned on whether Defendants proved that they "made a reasonable investigation[] and . . . had reasonable ground to believe, and did believe, that the statements [made in the public offering registration statement] were true and [that] there was no omission which made them misleading," id. at 807; and the *in pari delicto* defense turned on whether certain officers at CenTra who were also directors of Chandler Insurance were "roughly equally responsible for the alleged misrepresentations and omissions they accuse Defendants of." Id. at 808. We conclude that because these defenses all presented factual questions they were properly submitted to the jury. See, e.g., Johnson v. Thompson, 971 F.2d 1487, 1497-98 (10th Cir. 1992) (holding that questions of "'reasonable diligence'" involved in a statute of limitations question were properly submitted to the jury). Further, Defendants' argument has failed to convince us that the jury's findings on the questions of notice, reasonable investigation, reasonable belief, and fault were unsupported by the record, "and we are not disposed to disturb those factual findings." Kent v. Flickinger, 453 F.2d 955, 958 (10th Cir. 1972).

In a related argument, Defendants assert that Plaintiffs failed to prove the

materiality, scienter, and reliance elements of their third claim rising from false statements or material omissions made in the registration statement filed in conjunction with the 1990 public offering. Having reviewed the record, we conclude that Plaintiffs presented sufficient evidence on these elements to support the jury's verdict. On materiality, the testimony of Plaintiffs' reaction upon discovering the problems arising from their 1990 purchase, see, e.g., Appellant's App., Vol. 12 at 3968-69; Cross-Appellants' Jt. Second Supp. App., Vol. 5 at 1474-75, demonstrated "'a substantial likelihood that the disclosure of the omitted fact[s] would have . . . significantly altered the "total mix" of information made available'" to Plaintiffs. Basic Inc. v. Levinson, 485 U.S. 224, 231-32 (1988) (citation omitted). On the scienter element, the fact that Defendants misappropriated and personally benefitted from Plaintiffs' investment, see, e.g., Appellants' App., Vol. 5 at 1564; Vol. 11 at 3517-20, sufficiently established that they had the requisite "'intent to deceive, manipulate, or defraud'" Plaintiffs. Anixter, 77 F.3d at 1232 (citation omitted). Finally, on the element of reliance, we conclude that Plaintiffs' testimony that they would not have purchased the 1990 shares had Defendants disclosed the truth about how Defendants would eventually use the proceeds from the public offering, see, e.g., Appellants' App., Vol. 12 at 3969, is sufficient to establish that Defendants' "'misrepresentation [was] a substantial factor in determining the course of conduct which result[ed] in

-38-

. . . [Plaintiffs'] loss.'" T.J. Raney & Sons, Inc. v. Fort Cobb, Okla. Irrigation Fuel Auth., 717 F.2d 1330, 1332 (10th Cir. 1983) (citations omitted).

Defendants conclude their cross-appeal on the first and third claims with an ambiguous argument that the jury generally failed to follow its instructions on the issues related to the first and third claims and that its verdict on both claims is against the weight of the evidence. Defendants' argument on these points essentially consists of naked assertions that the jury "clearly ignored" the district court's instructions and that "[t]he evidence against Plaintiffs' first and third claims is overwhelming." Cross-Appellants' Jt. Opening Br. at 31-32. In light of our previous discussion, we conclude that these last claims are without merit and we reject them without further discussion. We affirm the district court's rulings denying Defendants' motions for judgment as a matter of law and a new trial on the first and third claims.

**B.**

Defendants also cross-appeal with respect to three of the derivative claims that were included in this action. On the first derivative claim, called the eighth claim, the jury found against the individual defendants for breach of fiduciary duty in connection with excessive commission bonuses distributed in 1988 and 1989, awarding $711,629 to Plaintiffs. See Appellants' App., Vol. 3 at 822. On

another derivative claim, called the twelfth claim, the jury found against the individual defendants in the amount of $25,000 ($5,000 per defendant) for breach of fiduciary duties for alleged improper use of company aircraft and receipt of improper personal benefits. See id. at 826. Finally, on the derivative claim called the fourteenth claim, the jury found against the individual defendants[14] and Rice and Price in the amount of $6 ($1 per defendant) for breach of fiduciary duties in connection with the acquisition of insurance agencies. See id. at 828.

On cross-appeal, Defendants argue that the district court erred in refusing to grant judgment as a matter of law or a new trial on the eighth, twelfth, and fourteenth claims because (1) Plaintiffs' eighth claim was barred by the existence of an express contract, and the judgment on that claim was irreconcilably inconsistent with the jury's other verdicts; (2) Plaintiffs failed to prove damages on the twelfth claim; (3) Plaintiffs' fourteenth claim was barred by a statute of limitations; (4) all three of these claims were barred by application of the business judgment rule; and (5) the jury's verdict on all three claims was against the weight of the evidence, the jury was improperly instructed on all three, and the jury failed to follow the court's instructions.

The derivative claims at issue here arose from the fiduciary duties that

---

[14]Defendant Mark T. Paden, previously included in our use of the "individual defendants" grouping, was not a defendant for purposes of this claim.

Oklahoma law imputes upon the individual defendants and Rice and Price as a matter of law by virtue of their positions as directors of the Chandler companies. The general rule in Oklahoma "'is that officers and directors in control of a corporation occupy toward the corporation and its stockholders, in respect of the business or property of the corporation, a fiduciary relation somewhat in the nature of a trusteeship . . . .'" FDIC v. Grant, 8 F. Supp.2d 1275, 1296-97 (N.D. Okla. 1998) (quoting Adams v. Mid-West Chevrolet Corp., 179 P.2d 147, 156 (Okla. 1946)). The district court incorporated this general rule into its jury instructions on claims eight, twelve, and fourteen. See Appellants' App., Vol. 2 at 782-83, 788-89, 791-92.

On claim eight, Defendants argue that this fiduciary relationship imputed by law was inapplicable because their fiduciary duties with respect to the excessive commission bonuses were governed by contract. They submit that "[c]ompliance with a valid contract cannot constitute a breach of fiduciary duty with respect to the other party to the contract." Cross-Appellants' Reply Br. at 17. We believe, however, that Defendants have characterized the eighth claim exactly backward. In the factual sequence of claim eight as alleged by Plaintiffs, the individual defendants breached their fiduciary duties as directors and officers of Chandler companies by falsely stating company profits in a self-serving scheme to inflate commission bonuses calculated on the basis of those profits. The

-41-

commission bonuses were provided for by contract, but the inflated bonus calculation arising from that contract came about only after the individual defendants had already breached their fiduciary duties by stating false profits. We hold that the district court did not err in applying the fiduciary relationship to Defendants as a matter of law and submitting claim eight to the jury.

Defendants argue that even if the district court were correct in submitting claim eight to the jury the verdict on that claim was against the great weight of the evidence. They direct our attention to the large amount of the evidence they presented at trial to rebut the eighth claim, but the extent of our review is merely on whether Plaintiffs' evidence is sufficient to support the verdict. In its verdict, the jury assigned liability to the individual defendants in their capacity as directors and officers of the Chandler companies, and it ascribed a figure of damages to each defendant based on his or her breach of duty in that capacity. See Appellants' App., Vol. 3 at 822. Having reviewed the record, we conclude that it provides sufficient evidence to support the jury's verdict.

Defendants also argue that the jury's verdict on the eighth claim was irreconcilably inconsistent with several other verdicts linked to the same fact pattern. Defendants assert that because a jury found in their favor on two of Plaintiffs' alternative theories set forth in this case, namely, Plaintiffs' breach of contract and unjust enrichment theories, liability for every theory based on the

identical set of facts ought to be directed to conform with those favorable verdicts. In other words, Defendants contend that because the jury in this case did not find them liable for excessive commission bonuses based on Plaintiffs' breach of contract or unjust enrichment theories the jury ought to be estopped from returning a verdict of liability on Plaintiffs' breach of fiduciary duties theory. Defendants' legal gymnastics on this point are unpersuasive.

It is well established that a party may plead different theories of relief. See Fed. R. Civ. P. 8(a). It follows that a jury may award relief to that party on one of those different alternative theories without awarding relief on all theories, and, conversely, that a jury may deny relief on one theory without denying relief on all theories. Indeed, the possibility of alternative outcomes is what makes the theories themselves alternative. In the case at hand, the jury was instructed on several legal theories by which Plaintiffs sought to impose liability on the individual defendants for their excessive commission bonuses. The jury returned a verdict in favor of Plaintiffs on claim eight, the breach of fiduciary duty claim, and against Plaintiffs on the other claims. Without findings or grounds more particular than those contained in the verdict form on record or Defendants' brief, we conclude that the jury's verdict on claim eight was not inconsistent with its verdicts on other claims.

With respect to the twelfth claim, Defendants argue that Plaintiffs failed to

demonstrate calculable damages stemming from the improper use of company aircraft. We dispose of this cross-appeal by simply noting that the relevant jury instruction permitted Plaintiffs to recover for "damages as a result of the aircraft use *or receipt of personal benefits*." Appellants' App., Vol. 2 at 788 (emphasis added). Defendants do not appear to challenge damages awarded on this claim for the receipt of improper personal benefits. Because the jury instruction was issued in the disjunctive, and because the record amply supports damages arising from breach of fiduciary duties for the receipt of improper personal benefits, see, e.g., id., Vol. 13 at 4364 (hunting farm); Vol. 5 at 1576; Vol. 13 at 4367-73 (luxury automobiles); Vol. 14 at 4652-54 (personal domestic services provided at hunting farm), we will not disturb the jury's damages award on the twelfth claim.

Turning to the fourteenth claim, Defendants argue that it should have been barred by the statute of limitations. In essence, Defendants are again challenging the jury's factual conclusion with respect to notice–a challenge lacking merit. The jury was properly instructed on the statute of limitations that applies to breach of fiduciary duties claims. See id., Vol. 2 at 803. The record contains sufficient evidence to support Plaintiffs' contention that they did not have notice of the undisclosed agency acquisitions that made up the fourteenth claim until approximately March 1991 at the earliest, meaning that by filing the claim on January 3, 1993, Plaintiffs were within the two-year limitations period. We

affirm the jury's conclusion that the statute of limitations did not bar Plaintiffs' fourteenth claim.

Defendants further argue that the district court should have applied the business judgment rule in granting them judgment as a matter of law on the eighth, twelfth, and fourteenth claims. As recited by the district court, this rule protects directors and officers of a corporation "from personal liability in their management of the business and affairs of a corporation if their decisions are the product of a reasonably prudent business judgment and can be attributed to a rational business purpose." Appellants' App., Vol. 2 at 812. Defendants argue that the rule barred Plaintiffs' claims based on breach of fiduciary duty because the board of directors for Chandler Insurance appointed a committee to investigate the fiduciary claims before the commencement of this action. Again, we see no merit to Defendants' argument. The application of the business judgment rule in Oklahoma is limited to "honest error[s] in judgment." Hargrave v. Canadian Valley Elec. Coop., 792 P.2d 50, 57 (Okla. 1990). The rule does not contravene the otherwise longstanding practice of holding officers and directors of a corporation personally liable for the tortious breach of fiduciary duties. See Stuart v. Robertson, 248 P. 617 (Okla. 1926). In this case, the jury was instructed as to the business judgment rule, but it did not find that the rule applied to the facts presented. Because the jury held that Defendants had breached their

fiduciary duties with respect to claims eight, twelve, and fourteen, it is reasonable to conclude that the jury deemed Defendants' culpable conduct as falling outside the scope of reasonably prudent business decisions attributable to rational business purposes. We hold that the district court did not err in refusing to apply the business judgment rule to the jury's verdict on the eighth, twelfth, and fourteenth claims.

Defendants conclude their cross-appeals on the eighth, twelfth, and fourteenth claims with three general arguments concerning the weight of the evidence, improper jury instructions, and jury error. We conclude that the jury was correctly instructed on the derivative claims at issue, that it followed those instructions, and that its verdict on those claims was not against the weight of the evidence.

## VI.

Near the end of their cross-appeal brief, Defendants rattle off several claims of procedural error committed by the district court. We see no need to discuss any of these issues at length. Having reviewed the briefs and record, we conclude that the district court did not abuse its discretion in certifying Plaintiffs as adequate derivative representatives, in excluding evidence Defendants sought to introduce regarding the divestiture order of the United States District Court for

the District of Nebraska, in granting Plaintiffs' motion for a jury trial, in consolidating related cases for the purpose of trial, and in denying Defendants' requests for peremptory challenges during the voir dire.[15]

## VII.

In sum, we DISMISS Plaintiffs' appeal of the district court's denial of their motion for fees and costs, and we AFFIRM the denial of Plaintiffs' motion for leave to amend their complaint. We conclude that the district court did not err in its review of Plaintiffs' and Defendants' other post-trial motions, and we AFFIRM those rulings in their entirety.[16]

Entered for the Court

Monroe G. McKay
Circuit Judge

---

[15]Defendants raise an additional cross-appeal issue in their reply brief concerning the position of Rice and Price with respect to the fourteenth claim. They assert that because the jury verdict resulted in favor of Rice and Price on the fraud claim arising from the facts surrounding the acquisition of insurance agencies, this court should direct a verdict in their favor on the breach of fiduciary duty claim arising from the same facts. Because Defendants only raised this issue in their cross-appeal reply brief, Plaintiffs did not have the opportunity to respond. Nevertheless, we will reject Defendants' arguments for substantially the same reasons as those discussed in Part V.B. regarding the eighth claim.

[16]We grant Plaintiffs' Motion for Leave to File Correction of Error, filed November 8, 1999, and we accept into the record the errata sheet attached to the motion.